Daniel A. Lev (CA Bar No. 129622)
    dlev@sulmeyerlaw.com
Asa S. Hami (CA Bar No. 210728)
    ahami@sulmeyerlaw.com
**Sulmeyer**Kupetz
A Professional Corporation
333 South Hope Street, Thirty-Fifth Floor
Los Angeles, California 90071-1406
Telephone: 213.626.2311
Facsimile: 213.629.4520

Attorneys for Howard M. Ehrenberg, Chapter 7 Trustee

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION

| | |
|---|---|
| In re | Case No. 2:12-bk-22639-ER |
| CLAIRE LEVINE, | Chapter 7 |
| Debtor. | **CHAPTER 7 TRUSTEE'S MOTION FOR ORDER (1) AUTHORIZING SALE OF REAL PROPERTY (15 East 69th Street, Unit 4D, New York, New York) FREE AND CLEAR OF LIENS, CLAIMS AND INTERESTS, (2) CONFIRMING SALE TO THIRD PARTY OR THE HIGHEST BIDDER APPEARING AT THE HEARING; (3) DETERMINING THAT BUYER IS A GOOD FAITH PURCHASER; AND (4) WAIVING THE FOURTEEN (14) DAY STAY PRESCRIBED BY RULE 6004(h) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF HOWARD M. EHRENBERG IN SUPPORT THEREOF** |
| | DATE:   February 20, 2013<br>TIME:   11:00 a.m.<br>PLACE:   Courtroom "1568" |

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

[DLEV\ 2391002.1 1/28/13 (7:36 PM)]

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

TO THE HONORABLE ERNEST ROBLES, UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, THE DEBTOR, AND ALL OTHER INTERESTED PARTIES:

Howard M. Ehrenberg, the duly appointed, qualified and acting Chapter 7 Trustee (the "Trustee") of the bankruptcy estate (the "Estate") of the debtor Claire Levine (the "Debtor"), hereby submits his "Chapter 7 Trustee's Motion for Order (1) Authorizing Sale of Real Property (15 East 69th Street, Unit 4D, New York, New York) Free and Clear of Liens, Claims and Interests, (2) Confirming Sale to Third Party or the Highest Bidder Appearing at the Hearing; (3) Determining That Buyer is a Good Faith Purchaser; and (4) Waiving the Fourteen (14) Day Stay Prescribed By Rule 6004(h) of the Federal Rules of Bankruptcy Procedure" (the "Motion"), and respectfully represents as follows:

## MOTION

Through this Motion, the Trustee seeks an order approving the sale (the "Sale") of the estate's interest in certain real property commonly known as 15 East 69th Street, Unit 4D, New York, New York (the "Real Property"), which consists of an apartment residence, together with a 1.76733 % interest in the "common elements", on the terms and conditions stated in the written Condominium Unit-Contract of Sale (the "Written Offer"), which is attached hereto as Exhibit "A" and incorporated herein by reference, to the Jason E. Phillips Trust (the "Buyer"), or its designee or nominee, for $5,454,000.00, cash, or to any person or entity who appears at the hearing and submits a higher acceptable bid. As part of the Motion, the Trustee seeks an order approving the Sale free and clear of certain liens, claims and interests, with said liens, claims and interests to attach to the sales proceeds in the same manner and priority as under applicable law. The Real Property is being sold on an "as is" "where is" basis, with no warranties, recourse, contingencies or representations of any kind. The Trustee also seeks an order (i) confirming the Sale to the Buyer or to the highest bidder appearing at the hearing, (ii) authorizing the Trustee to execute any and all documents that may be

necessary to consummate the Sale, (iii) determining that the Buyer or the successful bidder is entitled to 11 U.S.C. § 363(m) protection, and (iv) waiving the fourteen (14) day stay prescribed by Rule 6004(h) of the Federal Rules of Bankruptcy Procedure.

The proposed sale to the Buyer is subject to approval of the United States Bankruptcy Court and to qualified overbids, and any person or entity desiring to submit an overbid must submit (i) a cashier's check, made payable to "Howard M. Ehrenberg, Chapter 7 Trustee," in the amount of $547,400.00 (the "Deposit") and (ii) evidence of the financial wherewithal to close the contemplated sale, to counsel for the Trustee, at the hearing, before their initial bid. The Deposit represents ten percent (10%) of $5,474,000.00, which sum represents the initial sales price of $5,454,000.00 plus the $20,000.00 initial overbid amount. The Buyer has paid the initial deposit of $545,400.00 to the Trustee. The Deposit shall not be refundable if the successful overbidder is thereafter unable or unwilling to complete the purchase of the Real Property.

As noted, subject to Court approval, the Trustee recommends the first overbid be in the amount of $5,474,000.00, cash, which is $20,000.00 higher than the initial sales price of $5,454,000.00. Overbids shall be made in minimal increments of $10,000.00 thereafter such that the next highest minimum overbid would need to be an amount no less than $5,484,000.00. All due diligence is to be completed prior to the hearing as the Sale is on an "as-is" "where is" basis with no warranties, representations, recourse or contingencies of any kind. Each party, including the Buyer, must pay the full amount of the successful overbid to the Trustee within the terms and conditions set forth in the Written Offer or otherwise on or before March 19, 2013 (60 days after the execution of the Written Offer), unless extended by the parties pursuant to the Written Offer. In the event that the successful bidder cannot make such payment within that time, the Trustee shall be authorized to accept the offer made by the second highest overbidder. The Trustee reserves the right to reject any and all overbids that, in his business judgment, are insufficient.

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

**WHEREFORE**, the Trustee respectfully requests that the Motion be granted in all respects, that the sale of the Real Property to the Buyer or the successful overbidder be approved in a manner consistent herewith, and for such other and further relief as the Court deems just and proper under the circumstances.

DATED: January 28, 2013

**Sulmeyer**Kupetz
A Professional Corporation


By: _____
Daniel A. Lev
Attorneys for Howard M. Ehrenberg, Chapter 7 Trustee

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### INTRODUCTION

Through this Motion, the Trustee seeks an order approving the sale (the "Sale") of the estate's interest in certain real property commonly known as 15 East 69th Street, Unit 4D, New York, New York (the "Real Property"), which consists of an apartment residence, together with a 1.76733 % interest in the "common elements", on the terms and conditions stated in the written Condominium Unit-Contract of Sale (the "Written Offer"), which is attached hereto as Exhibit "A" and incorporated herein by reference, to the Jason E. Phillips Trust (the "Buyer"), or its designee or nominee, for $5,454,000.00, cash, or to any person or entity who appears at the hearing and submits a higher acceptable bid. As part of the Motion, the Trustee seeks an order approving the Sale free and clear of certain liens, claims and interests, with said liens, claims and interests to attach to the sales proceeds in the same manner and priority as under applicable law. The Real Property is being sold on an "as is" "where is" basis, with no warranties, recourse, contingencies or representations of any kind. The Trustee also seeks an order (i) confirming the Sale to the Buyer or to the highest bidder appearing at the hearing, (ii) authorizing the Trustee to execute any and all documents that may be necessary to consummate the Sale, (iii) determining that the Buyer or the successful bidder is entitled to 11 U.S.C. § 363(m) protection, and (iv) waiving the fourteen (14) day stay prescribed by Rule 6004(h) of the Federal Rules of Bankruptcy Procedure.

The Trustee believes all prerequisites for approval of the sale under applicable provisions of the Bankruptcy Code have been satisfied and he therefore urges the Court to grant the Motion.

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

[DAL\LIT\529302.1 1/28/13 (7:14 PM)]

## II.

## BACKGROUND

On April 10, 2012 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code.  Subsequently, pursuant to an order of the Court entered on July 30, 2012, the chapter 11 case was converted to chapter 7.  Pursuant to a notice of appointment from the Office of the United States Trustee filed on August 2, 2012, Howard M. Ehrenberg became the duly appointed, qualified, and acting chapter 7 trustee for the Debtor's estate, and he continues to act in this capacity.  After his appointment, the Trustee reviewed the Debtor's schedules and statement of affairs to determine if the Estate consisted of any assets that could be liquidated for the benefit of creditors.  The schedules and statement of affairs filed by the Debtor listed ownership interests in numerous real property assets.  Among the scheduled real property was the property located at 15 East 69th Street, Unit 4D, New York, New York.  The property consists of a luxury apartment located on the Upper West Side in the City of New York.  The Schedules alleged that the Real Property had a fair market value of $6,000,000.00, against secured claims of $3,800,000.00.  Pursuant to Rule 201 of the Federal Rules of Evidence, the Court is respectfully requested to take judicial notice of the Debtor's Schedule A and D, true and correct copies of which are attached hereto as Exhibit "B" and incorporated herein by reference.  Title to the Real Property is held by the Amadeus Trust, a revocable trust under which the Debtor, and hence, the Trustee, is a co-trustee, together with Gerald Goldstein, a non-debtor.

The Trustee subsequently obtained an order from the Court authorizing the employment of The Corcoran Group for the sole purpose of procuring an offer to purchase the Real Property.  The Trustee now has obtained a written offer in the amount of $5,454,000.00 for the purchase of the Real Property, subject to qualifying overbids. The Trustee believes that the present price to be paid is fair and reasonable and represents the highest and best offer the Estate has received to date.  Gerald Goldstein,

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

[DAL\LIT\529302.1 1/28/13 (7:32 PM)]                    -6-

the co-trustee of the Amadeus Trust, also agrees that the offer is fair and representative of the fair market value of the Real Property.  In sum:

1. The Real Property will be sold to the Buyer for the total purchase price of $5,454,000.00, cash, or to any person or entity who appears at the hearing and submits a higher acceptable bid;

2. The first trust deed in favor of JP Morgan Chase Bank, N.A. ("JP Morgan"), in the approximate amount of $3,800,000.00 will be paid from the sales proceeds, assuming the principal, interest, fee and charge calculations are appropriate, reasonable and properly supported;

3. The approved broker's commission, and the taxes, fees and costs of the sale chargeable to the Estate will be paid from the sale proceeds;

4. The sum of $1,700.00 (approximately) advanced by the Estate to prevent the utilities from being shut off will be paid from the sales proceeds;

5. The sale will be free and clear of any unknown encumbrances, liens, claims, or interests, with said encumbrances, liens, claims, or interests attaching to the net sales proceeds in the same manner and with the same effect, if any, under applicable federal and state law; and

6. The Trustee shall receive 50% of the net sales proceeds, with the remaining 50% of the net sales proceeds paid to Gerald Goldstein on account of his 50% interest, with the payment directed to Nemecek & Cole, LLP, his counsel of record.

The Trustee will use the Estate's portion of the net sales proceeds to pay all remaining administrative, secured and unsecured claims of the Estate.

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

## III.

## <u>THE SALE IS IN THE BEST INTERESTS OF THE ESTATE</u>

The Trustee has the right and power to sell the Real Property pursuant to 11 U.S.C. § 363(b)(1), which provides that:

> [t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate.

In approving a sale outside the ordinary course of business, the court must not only articulate a sufficient business reason for the sale, it must further find that the sale is in the best interests of the estate. In other words, the sale is fair and reasonable, it has been adequately marketed, it has been negotiated and proposed in good faith, and it is an "arms-length" transaction. See <u>In re Wilde Horse Enterprises, Inc.</u>, 136 B.R. 830 (Bankr. C.D. Cal. 1991) (in determining whether a proposed sale of equipment was proper under Section 363, court considered whether the terms of proposed sale were fair and equitable, whether there was a good business reason for completing the sale and whether the transaction was proposed in good faith). See also <u>Matter of Phoenix Steel Corp.</u>, 82 B.R. 334, 335-356 (Bankr. D. Del. 1987). Additional factors a court should consider in deciding whether to approve a sale of property under Section 363 include the integrity of the sale and the preservation of the best interests of the estate. See, <u>In re Alves</u>, 52 B.R. 353 (Bankr. D. R.I. 1985). A sale of an estate's interest in real or personal property generally is allowed under Section 363 if the estate has equity in the property and the sale is in the best interest of the estate. <u>In re Investors Funding Corporation of New York</u>, 592 F.2d 134, 135 (2nd Cir. 1979) <u>cert.</u> <u>denied</u> 444 U.S. 830 (1979).

As noted, a sale outside the ordinary course of business must be based upon a sufficient business reason and be in the best interests of the estate. The asset must have been adequately marketed, been negotiated and proposed in good faith, and the sale must be the results of an "arms-length" transaction. <u>Wilde Horse Enterprises</u>, 136 B.R. at 830. The Trustee acknowledges his responsibility to maximize any recovery

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

from the assets of the Estate for the benefit of unsecured creditors.  In this regard, the Sale will allow the Trustee to effectively administer the Estate as this property constitutes one of the primary assets of the Estate.  In addition, the Sale is fair and reasonable.  The Trustee's broker is familiar with the value of real property located in the general area of the Real Property and the property has been aggressively marketed.

As such, the Trustee has satisfied each of the applicable elements governing the proposed sale of the Real Property and the Trustee has sound business reasons for entering into and seeking consummation of the Sale.  First, the Trustee believes, based on the Trustee's experience and that of his broker, comparable sales of property in the area, that the proposed sales price of $5,454,000.00 is a fair offer.  Mr. Goldstein agrees.  See Declaration of Howard M. Ehrenberg, attached hereto.  Second, at all relevant times the Trustee and the Buyer have engaged in an "arms-length" transaction in an effort to marshal the Estate's assets.  Third, the sale of the Real Property will benefit the Estate, as equity will be realized upon the eventual close of the Sale.  Therefore, given the present circumstances, the Trustee believes that the proposed sale terms are fair and reasonable and the Sale should be approved.

## IV.

## THE SALE SHOULD BE APPROVED FREE AND CLEAR OF LIENS, CLAIMS AND INTERESTS PURSUANT TO 11 U.S.C. § 363(f)

Section 363(f) provides that a Trustee may sell assets of the estate free and clear of any interest in such property of an entity other than the estate only if - (1) applicable non-bankruptcy law permits sale of such property free and clear of such interest; (2) such entity consents; (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property; (4) such interest is in bona fide dispute; or (5) such entity could be compelled, in legal or equitable proceedings, to accept a money satisfaction of such interest.  This section of the Bankruptcy Code has been interpreted to be in the disjunctive, rather than the

conjunctive. Thus, the Trustee need only demonstrate that one of the elements of this section exists. In re Elliot, 94 B.R. 343, 345 (Bankr. E.D. Pa. 1988).

At the present time, other than the secured claim of JP Morgan, the Trustee is unaware of any other consensual liens, claims or encumbrances. However, due to recent construction on the Real Property, and the fact that the property is located in New York, there may be additional parties who claim an interest in or against the Real Property. Although the Trustee intends to notify all interested parties of the Sale through the notice of motion. Any party claiming such a disputed lien or interest may file an objection with the Court and be heard at the hearing on the Motion. If there is no objection, the parties will be deemed to have consented to the sale of the Real Property. See Veltman v. Whetzal, 93 F.3d 517 (8th Cir. 1996) (failure to object to proposed sale, coupled with agreement authorizing sale free of interest, constituted consent); Elliot, supra (implied consent found); In re Tabore, Inc., 175 B.R. 855 (Bankr. D. N.J. 1994) (failure to object to notice of sale or attend hearing deemed consent to sale for purposes of section 363); In re Shary, 152 B.R. 724 (Bankr. N.D. Ohio 1993) (state's failure to object to transfer of liquor license constituted consent to sale). Thus, pursuant to Section 363(f)(2), the Trustee may sell the Real Property free and clear of any interest of entities other than the bankruptcy estate because the noticed parties will be deemed to have consented to the sale of the Real Property if they make no objections to the Sale. If an objection is filed by a known or unknown party, the Trustee believes that this will constitute a dispute within the meaning of Section 363(f)(4).

In addition, pursuant to Section 363(f)(3), the Trustee may sell property of the estate free and clear of interests if the interest is a lien and the price at which the property is to be sold is greater than the aggregate value of all liens on that property. This provision requires the Court to look not merely to the value of the lien of the objecting creditor, but to whether the estate has any equity in the property. The question becomes, "what is the value of the liens?" Early decisions held that Section 363(f)(3)

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

required that the sales price exceed the face amount of all liens.  However, more recent decisions have held that the term "value" should be interpreted as the "secured valued of the liens, not the face amount."  See In re Beker Industries Corp., 63 B.R. 474, 477 (Bankr. S.D.N.Y. 1986) (actual value as distinguished from lien); In re Collins, 180 B.R. 447, 450-01 (Bankr. E.D. Va. 1995) (actual value rather than base amount of the lien); In re WPRV-TV, Inc., 143 B.R. 315, 320 (D.P.R.) 1991, 983 F.2d 336 (1st Cir. 1993) (actual value as used in §506(a)); In re Milford Group, Inc., 150 B.R. 904, 906 (Bankr. E.D. Pa. 1992) (value of collateral rather than value of all debts against property); In re Oneida Lake Dev., Inc., 114 B.R. 352 (Bankr. N.D.N.Y. 1990) (value of creditor's interest in property rather than face amount of lien); In re Terrace Gardens Park Partnership, 96 B.R. 707 (Bankr. W.D. Tex. 1989) (debtor could sell estate property free and clear of liens, so long as the sale price exceeded the value of the property, even if it did not exceed the aggregate of all the debts asserted to be secured by liens on the property).

In this case, the Trustee is selling the Real Property for what he believes to be the highest and best offer he has received or will expect to receive, which exceeds the amount of known voluntary and involuntary liens against the Real Property.  However, if the value of the liens is measured as the value of the collateral, and not the face value of the lien, then the manner in which the Real Property is being sold will ensure that the full, fair market value of the collateral is received.  Thus, the Section 363(f)(3) requirement that the price at which the property is sold is greater than the aggregate value of all undisputed liens will be satisfied.

Therefore, the Trustee has more than satisfied the requirements of Section 363(f) because he has demonstrated that at least three of the conditions of this section exist in the present case.  As such, based on the foregoing reasons, the Trustee believes that the sale of the Real Property free and clear of any discovered unknown liens, claims or interests is proper pursuant to Section 363(f), and said liens, claims or interests, if any, should attach to the Estate's net proceeds of the Sale.  As noted, the Trustee does not

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

object to the payment of the holder of the first trust deeds, namely, JP Morgan, from the sales proceeds.

V.

**THE SALE IS PROPOSED IN GOOD FAITH**

As this Court knows, Section 363(m) of the Bankruptcy Code authorizes the Court to make a finding that a buyer is a good faith purchaser.  A good faith purchaser of property is protected from the effects of reversal of the order authorizing a sale as long as the trial court finds that the purchaser acted in good faith and the aggrieved party fails to obtain a stay of the sale order.  Although the Bankruptcy Code does not define the term "good faith," courts have provided guidance as to the appropriate factors to consider.  In essence, the purpose of Section 363(m) is to disable courts from backtracking on promises with respect to bankruptcy sales in the absence of bad faith.  Kham and Nate's Shoes No. 2 v. First Bank, 908 F.2d 1351, 1355 (7th Cir. 1990).  Generally speaking, the requirement that a purchaser act in good faith speaks to the integrity of his conduct in the course of the sale proceeding and focuses primarily on the disclosure of all material sale terms and the absence of fraud or collusion.  See In re Pine Coast Enterprise, Ltd., 147 B.R. 30, 33 (Bankr. N.D. Ill. 1992); In re Abbotts Dairies of Pennsylvania, Inc., 788 F.2d 143, 147 (3rd Cir. 1986).

The Buyer has no relation to the Debtor or the Trustee, has prepared and submitted the offer in good faith, and has performed all of the conditions imposed on it in connection with the Sale.  Since there are no facts raising the specter of bad faith or calling into question the propriety of the Sale, the Court should extend Section 363(m) protection to the Buyer.  To the extent that a third party bidder purchases the Real Property, the Trustee reserves the right to request that the Section 363(m) protections be extended to the overbidder as well.  See In re M Capital Corp., 290 B.R. 743 (9th Cir. BAP 2003) (court may not make a finding of good faith in the absence of evidence, but may make such a finding if appropriate evidence is presented).

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

## VI.

## THE SALE ENABLES THE TRUSTEE TO PROPERLY DISCHARGE HIS FIDUCIARY

## DUTY TO UNSECURED CREDITORS

Section 704 of the Bankruptcy Code requires the Trustee to do the following:

> collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest.

11 U.S.C. § 704(1).

With this goal in mind, the Trustee determined that the proposed sale would afford him the opportunity to pay certain secured, administrative and unsecured claims of the Estate from the sale proceeds. Since the only other written offers the Trustee received were less than the Buyer's offer for the Real Property, the Trustee agreed to seek Court approval for the Sale. Although the Trustee conceivably could further market the Real Property, the Trustee's duty is to provide a mechanism for the payment of claims as expeditiously as possible. Since the Sale will insure a prompt administration of this Estate, and since the Buyer's offer was virtually identical to the initial listing price, the Trustee believes he has discharged his fiduciary duties, since it is unclear how much increased benefit would be added to the overall value of the Estate if the Real Property continued to be marketed. Despite this, the Trustee will continue to market the Real Property not only through the Estate's employed broker and the Rule 6004 notice filed with the Court, but through the MLS in an effort to bring other bidders to the sale hearing. Thus, subject to this Court's approval, the Sale can proceed without any delay, and the remaining creditors can be assured of a prompt administration of the Estate.

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

## VII.

## THE COURT SHOULD WAIVE THE FOURTEEN DAY STAY PRESCRIBED BY RULE 6004(h) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE

Under Rule 6004(h) of the Federal Rules of Bankruptcy Procedure, an order authorizing the sale of property, other than cash collateral, is stayed until expiration of fourteen (14) days after the entry of the order, unless the Court orders otherwise.  In this case, the Trustee believes there is cause to waive the fourteen day stay prescribed by Rule 6004(h) since a waiver of the fourteen day stay period will expedite the consummation of the Sale and prevent any potential intrusions by the Debtor or third parties.

## VIII.

## CONCLUSION

Based on the foregoing, the Trustee respectfully requests that the Motion be granted in all respects, and for such other and further relief as the Court deems just and proper under the circumstances.

DATED: January 28, 2013            **Sulmeyer**Kupetz
                                   A Professional Corporation



                                   By: _____
                                   Daniel A. Lev
                                   Attorneys for Howard M. Ehrenberg, Chapter 7
                                   Trustee

[DAL\LIT\529302.1 1/28/13 (7:14 PM)]                    -14-

## DECLARATION OF HOWARD M. EHRENBERG

I, Howard M. Ehrenberg, declare:

1.      I am an attorney at law duly admitted to practice before this Court and am the duly appointed, qualified and acting Chapter 7 Trustee of the bankruptcy estate (the "Estate") of the debtor Claire Levine (the "Debtor").  Each of the facts contained in this declaration is based on personal knowledge and, if called as a witness, I could and would competently testify thereto under oath.

2.      Through this Motion, I am seeking an order approving the sale (the "Sale") of the estate's interest in certain real property commonly known as 15 East 69th Street, Unit 4D, New York, New York (the "Real Property"), which consists of an apartment residence, together with a 1.76733 % interest in the "common elements", on the terms and conditions stated in the written Condominium Unit-Contract of Sale (the "Written Offer"), which is attached hereto as Exhibit "A" and incorporated herein by reference, to the Jason E. Phillips Trust (the "Buyer"), or its designee or nominee, for $5,454,000.00, cash, or to any person or entity who appears at the hearing and submits a higher acceptable bid.  As part of the Motion, I am also seeking an order approving the Sale free and clear of certain liens, claims and interests, with said liens, claims and interests to attach to the sales proceeds in the same manner and priority as under applicable law.  The Real Property is being sold on an "as is" "where is" basis, with no warranties, recourse, contingencies or representations of any kind.  I am further seeking an order (i) confirming the Sale to the Buyer or to the highest bidder appearing at the hearing, (ii) authorizing me, as Trustee, to execute any and all documents that may be necessary to consummate the Sale, (iii) determining that the Buyer or the successful bidder is entitled to 11 U.S.C. § 363(m) protection, and (iv) waiving the fourteen (14) day stay prescribed by Rule 6004(h) of the Federal Rules of Bankruptcy Procedure.  I believe all prerequisites for approval of the Sale under applicable provisions of the Bankruptcy Code have been satisfied and I therefore urge the Court to grant the Motion.

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

DLEV\ 2391002.1

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

3.    On April 10, 2012 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code.  Subsequently, pursuant to an order of the Court entered on July 30, 2012, the chapter 11 case was converted to chapter 7.  Pursuant to a notice of appointment from the Office of the United States Trustee filed on August 2, 2012, I became the duly appointed, qualified, and acting chapter 7 trustee for the Debtor's estate, and I continue to act in this capacity.  After my appointment, I reviewed the Debtor's schedules and statement of affairs to determine if the Estate consisted of any assets that could be liquidated for the benefit of creditors. The schedules and statement of affairs filed by the Debtor listed ownership interests in numerous real property assets.  Among the scheduled real property was the property located at 15 East 69th Street, Unit 4D, New York, New York.  The property consists of a luxury apartment located on the Upper West Side in the City of New York.  The Schedules alleged that the Real Property had a fair market value of $6,000,000.00, against secured claims of $3,800,000.00.  I also learned that title to the Real Property is held by the Amadeus Trust, a revocable trust under which the Debtor, and hence, me, as the Debtor's Trustee, is a co-trustee, together with Gerald Goldstein, a non-debtor.

4.    I subsequently obtained an order from the Court authorizing the employment of The Corcoran Group for the sole purpose of procuring an offer to purchase the Real Property.  I now have obtained a written offer in the amount of $5,454,000.00 for the purchase of the Real Property, subject to qualifying overbids.  I believe that the present price to be paid is fair and reasonable and represents the highest and best offer the Estate has received to date.  Gerald Goldstein, the co-trustee of the Amadeus Trust, also agrees that the offer is fair and representative of the fair market value of the Real Property.

5.    In sum, (i) the Real Property will be sold to the Buyer for the total purchase price of $5,454,000.00, cash, or to any person or entity who appears at the hearing and submits a higher acceptable bid; (ii) the first trust deed in favor of JP Morgan Chase Bank, N.A. ("JP Morgan"), in the approximate amount of $3,800,000.00 will be

paid from the sales proceeds; (iii) the approved broker's commission, and the taxes, fees and costs of the sale chargeable to the Estate will be paid from the sale proceeds; (iv) the sum of $1,700.00 (approximately) advanced by the Estate to prevent the utilities from being shut off will be paid from the sales proceeds; (v) the sale will be free and clear of any unknown encumbrances, liens, claims, or interests, with said encumbrances, liens, claims, or interests attaching to the net sales proceeds in the same manner and with the same effect, if any, under applicable federal and state law; and (vi) as Trustee, I will receive 50% of the net sales proceeds, with the remaining 50% of the net sales proceeds paid to Gerald Goldstein on account of his 50% interest, with the payment directed to Nemecek & Cole, LLP, his counsel of record.  As Trustee, I intend to use the Estate's portion of the net sales proceeds to pay all remaining administrative, secured and unsecured claims of the Estate.

6.    I intend to notify all interested parties of the Sale through the notice of motion.  Any party objecting to such Sale may file their objection with the Court and be heard at the hearing on the Motion.  If there is no objection, the parties will be deemed to have consented to the sale of the Real Property.  Thus, pursuant to Section 363(f)(2), in my opinion I may sell the Real Property, free and clear of any interest of entities other than the bankruptcy estate, because they will be deemed to have consented to the Sale of the Real Property, if they make no objections to the Sale. If a party unknown to me objects on the ground that it possesses a claim, interest, or encumbrance against the Real Property, this will constitute a bona fide dispute and the Real Property can be sold under Section 363(f)(4).

7.    In this case, I am selling the Real Property for what I believe to be the highest and best offer I have received or will expect to receive, which is an amount in excess of the known undisputed, voluntary and involuntary liens against the Real Property.  As such, based on the foregoing, I believe that the sale of the Real Property free and clear of liens, claims or interests is proper pursuant to Section 363(f), and any unknown liens, claims or interests, if any, should attach to the Estate's portion of the Sale

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

proceeds. As noted, I do not object to the payment of the holder of the first trust deed, namely, JP Morgan from the sales proceeds, assuming the principal, interest, fee and charge calculations are appropriate, reasonable and properly supported.

8.    I am also requesting that the Court extend good faith purchaser status to the Buyer, since it has no relation to me or the Debtor and has made the offer in good faith. I also am requesting that the Court extend such protections to any successful overbidder that is unrelated to the Debtor. In this regard, it still should be noted that the sale to the Buyer was the result of an arm's length transaction. There are no facts raising the specter of bad faith or calling into question the propriety of the Sale to the Buyer or any successful purchaser. Therefore, pursuant to Section 363(m), the Court should find that the Sale has been entered into in good faith.

9.    I am also requesting that the Court waive the fourteen (14) day stay period prescribed by Rule 6004(h) of the Federal Rules of Bankruptcy Procedure. I believe there is cause to waive the fourteen day stay period since this will expedite the consummation of the Sale and will prevent any possible intrusions by the Debtor.

10.    As Trustee, my goal is to reduce to money the property of the Estate and to close the Estate as expeditiously as possible while always keeping in mind what is in the best interests of creditors. With this goal in mind, I determined that the proposed Sale would afford me the opportunity to pay certain creditors of the Estate from the sale proceeds. Since the only other written offer I received for the Real Property was less than the full listing price offer from the Buyer, I agreed to seek Court approval for the Sale. Although I conceivably could further market the Real Property, my duty is to provide a mechanism for the payment of claims as expeditiously as possible. Since the Sale will insure that allowed secured claims will be paid, and there will be a net to the Estate, I believe I have discharged my fiduciary duties, since it is unclear how much increased benefit would be added to the overall value of the Estate if the Real Property continued to be marketed. In any event, I intend to cause to be filed the appropriate Rule 6004 notice of sale with the Court and to continue to market the Real Property through

my employed broker and the MLS.  Thus, subject to this Court's approval, the Sale can proceed without any delay, and the remaining creditors can be assured of a prompt administration of the Debtor's Estate.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 30th day of January, 2013, at Los Angeles, California.

_____
Howard M. Ehrenberg, Chapter 7 Trustee

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

DLEV\ 2391002.1

21

# EXHIBIT A

*Note: This form is intended to deal with matters common to most transactions involving the sale of a condominium unit. Provisions should be added, altered or deleted to suit the circumstances of a particular transaction. No representation is made that this form of contract complies with Section 5-702 of the General Obligations Law ("Plain Language Law").*

CONSULT YOUR LAWYER BEFORE SIGNING THIS AGREEMENT
Condominium Unit—Contract of Sale

**This Contract** made as of January 1, 2013 ⑱  between:

Gerald Goldstein and Clare Levine as Trustees of the Amadeus Trust  *Gerald Goldstein, as Trustee of the Amadeus Trust*

hereinafter called "Seller", having a residence or principal place of business at  *and Howard Ehrenberg, in his sole*

15 East 69th Street, Unit 4D, New York, NY 10021  *and limited capacity as Chapter 7 Trustee of the Bankruptcy Estate of Clare Levine, as Trustee of the Amadeus Trust*

AND

Jason E. Phillips Trust

hereinafter called "Purchaser", having a residence or principal place of business at

210 East 78th Street, New York, NY 10075

1. **Unit**: The Seller agrees to sell and convey, and the Purchaser agrees to purchase the unit known as Unit No. 4D ("Unit") in the building ("Building") known as 15 East 69th Street ("Condominium") and located at 15 East 69th Street, New York, New York, together with an undivided 1.76733 percent interest in the Common elements (as defined in para. 6) appurtenant thereto, subject to the terms and conditions set forth. The Unit shall be as designated in the Declaration of Condominium Ownership and By-Laws (as the same may be amended from time to time, the "By-Laws") of the Condominium.

2. **Personal Property**: Included in this sale: (a) The sale includes all of Seller's right, title and interest, if any, in and to:

(i) the refrigerators including ice makers, freezers, ranges, ovens and built-in microwave ovens; dishwashers; clothes washing machines, clothes dryers, cabinets and counters, lighting and plumbing fixtures, air conditioning equipment, venetian blinds, shades, screens, storm windows and other window treatments, wall-to-wall carpeting, bookshelves, switch plates, door hardware, built-ins, fireplace equipment, built-in wine racks, mantels, stained glass, built-in mirrors, and articles of property and fixtures attached to or appurtenant to the Unit, except those listed in subpara. 2(b), all of which included property and fixtures are represented to be owned by Seller, free and clear of all liens and encumbrances other than those encumbrances ("Permitted Exceptions") set forth on Schedule A (*strike if inapplicable items*); and

(ii) Extra Wood Flooring

(b) Excluded from this sale are:

(i) furniture and furnishings (other than as specifically provided in this Contract), and

(ii);

(c) The property referred to in subpara. 2(a)(i) and (ii) may not be purchased if title to the Unit is not conveyed pursuant to this contract.

3. **Purchase Price**: (a) The purchase price ("Purchase Price") is $5,454,000.00, payable as follows:

(i) $545,400.00 ("Downpayment") on the signing of this Contract by check subject to collection, the receipt of which is hereby recognized, to be held in escrow pursuant to para. 15; and

(ii) $4,908,600.00 representing the balance of the Purchase Price, by certified check of Purchaser or official bank check (except as otherwise provided in this Contract) on the delivery of the deed.

(b) All instruments in payment of the Purchase Price shall represent United States currency and be drawn on or issued by a bank or trust company authorized to accept deposits in New York State. All checks in payment of the Downpayment shall be payable to the order of Escrowee (as hereinafter defined). All checks in payment of the balance of the Purchase Price shall be payable to the order of the Seller (or as Seller otherwise directs pursuant to subparas. 6(a)(ix) or 18(b)).

(c) Aside from the Downpayment and checks aggregating not more than one-half of one percent of the Purchase Price, including closing adjustments, all checks delivered by Purchaser shall be certified or official bank checks as herein provided.

4. **Closing of Title**: The closing documents referred to in para. 6 shall be delivered, and payment of the balance of the Purchase Price shall be made, at The Closing, to be held on or about 60 days hereof at 10:00am , at the offices of

Federman Steifman LLP
220 East 42nd Street, 29th Floor
New York, NY 10017

or at the office of Purchaser's lending institution or its counsel; provided, however, that such office is located in either the City or County in which either (a) Seller's attorney maintains an office or (b) the Unit is located.

5. **Representations, Warranties and Covenants**: The Seller unconditionally represents, warrants and covenants that:

(a) The Seller is the sole rightful owner of the Unit and the personal property described in subpara. 2(a), and Seller has the full right, power and authority to sell, convey and transfer the same;

(b) The common charges imposed by the Condominium (excluding separately billed utility charges) for the Unit on the date hereof are $3,872.87 per month;

(c) Seller has not received any notice, written or oral, of any intended assessment or increase in common charges not reflected in subpara 5(b). Purchaser acknowledges that it will not have the right to cancel this Contract in the event of the imposition of any assessment or increase in common charges after the date hereof of which Seller has not heretofore received written or oral notice;

(d) The real estate taxes for the Unit for the fiscal year of through are $. See Attached from NYC Dept of Finance Website.

(e) Seller is not a "sponsor" or a nominee of a "sponsor" under any plan of condominium organization affecting the Unit;

(f) All refrigerators including ice makers, freezers, ranges, ovens and built-in microwave ovens, dishwashers, clothes washing machines, clothes dryers, cabinets and counters, lighting and plumbing fixtures, air conditioning equipment, venetian blinds, shades, screens, storm windows and other window treatments, wall-to-wall carpeting, bookshelves, switch plates, door hardware, built-ins, fireplace equipment, built-in wine racks, mantels, stained glass, built-in mirrors and articles of property included in this sale will be in working order at the time of Closing;

(g) If a copy is attached to this Contract, the copy of the Certificate of Occupancy covering the Unit is a true and correct copy; and

(h) Seller is not a "foreign person" as defined in IRC #1445 as amended, and the regulations thereunder (Code Withholding Section). (*If applicable, delete and provide for compliance with Code Withholding Section, as defined in para. 17*)

6. **Closing Documents**: (a) At the Closing, Seller shall deliver to Purchaser the following:

(i) Bargain and sale deed with covenant against grantor's acts ("Deed"), complying with RPL §339-o and containing the covenant required by LL §13 (5), conveying to Purchaser title to the Unit, and any garage or storage units appurtenant to the Unit, together with its undivided interest in the Common Elements (as such term is defined in the Declaration and which term shall be deemed to include Seller's right, title and interest in any limited common elements attributable to or used in connection with the Unit) appurtenant thereto, free and clear of all liens and encumbrances other than Permitted Exceptions. The Deed shall be executed and acknowledged by Seller and, if requested by the Condominium, executed and acknowledged by Purchaser, in proper statutory form for recording;

(ii) If a corporation and if required pursuant to BCL §909, Seller shall deliver to Purchaser: (1) a resolution of its board of directors authorizing the delivery of the Deed or a statement included in the Deed as follows: "This conveyance is made in the ordinary course of business actually conducted by the Grantor", and (2) a certificate executed by an officer of such corporation certifying as to the adoption of such resolution and setting forth facts demonstrating that the delivery of the Deed is in conformity with the requirements of BCL §909. The Deed shall also contain a recital sufficient to establish compliance with such law;

(iii) A waiver of right of first refusal of the board of managers of the Condominium ("Board") if required in accordance with para. 8;

(iv) A statement by the Condominium or its managing agent on behalf of and authorized by the Condominium that the common charges and any assessments then due and payable to the Condominium have been paid to the date of the Closing;

(v) All keys to the doors of, and mailbox and for, the Unit and storage units;

(vi) Such affidavits and/or other evidence as the title company ("Title Company") from which Purchaser has ordered a title insurance report and which is authorized to do business in New York State shall reasonably require in order to omit from its title insurance policy all exceptions for judgments, bankruptcies or other returns against Seller and persons or entities whose names are the same as or are similar to Seller's name;

(vii) New York City Real Property Transfer Tax Return, if applicable, prepared, executed and acknowledged by Seller in proper form for submission;

(ix) Checks in payment of all applicable real property transfer taxes except a transfer tax which by law is primarily imposed on the purchaser ("Purchaser Transfer Tax") in connection with the sale. In lieu of delivery of such checks, Seller shall have the right, upon not less than

3 business days notice to Purchaser, to cause Purchaser to deliver checks at the Closing and to credit the amount against the balance of the Purchase Price. Seller shall pay the additional transfer taxes, if any, payable after the Closing by reason of the conveyance of the Unit, which obligation shall survive the Closing;

(x) Certification that Seller is not a foreign person pursuant to para. 18. *(If inapplicable, delete and provide for compliance with Code Section, as defined in para. 17.);* and

(xi) Affidavit that a single station smoke detecting alarm device is installed pursuant to New York Executive Law β 378(5).

(b) At the Closing, Purchaser shall deliver to Seller the following:

(i) Checks in payment of (y) the balance of the Purchase Price in accordance with subpara. 3(b) and (z) any Purchaser Transfer Tax;

(ii) If required by the Declaration or By-Laws, power of attorney to the Board, prepared by Seller, in the form required by the Condominium. The Power of attorney shall be executed and acknowledged by Purchaser and, after being recorded, shall be sent to the Condominium;

(iii) New York City Real Property Transfer Tax Return executed and acknowledged by Purchaser and an Affidavit in Lieu of Registration pursuant to New York Multiple Dwelling Law, each in proper form for submission, if applicable; and

(iv) If required, New York State Equalization Return executed and acknowledged by Purchaser in proper form for submission.

(c) It is a condition of Purchaser's obligation to close title hereunder that:

(i) All notes or notices of violations of law or governmental orders, ordinances or requirements affecting the Unit and noted or issued by any governmental department, agency or bureau having jurisdiction which were noted or issued on or prior to the date hereof shall have been cured by Seller;

(ii) Any written notice to Seller from the Condominium (or its duly authorized representative) that the Unit is in violation of the Declaration, By-Laws or rules and regulations of the Condominium shall have been cured; and

(iii) The Condominium is a valid condominium created pursuant to RPL Art. 9-B and the Title Company will insure the same.

7. Closing Adjustments: (a) The following adjustments shall be made as of 11:59 P.M. of the day before the Closing:

(i) Real estate taxes and water charges and sewer rents, unless same are part of common charges, on the basis of the fiscal period for which assessed, except that if there is a water meter with respect to the Unit, apportionment shall be based on the last available actual reading, subject to adjustment after the Closing, promptly after the next reading is available; provided, however, that in the event real estate taxes have not, as of the date of Closing, been separately assessed to the Unit, real estate taxes shall be apportioned on the same basis as provided in the Declaration or By-Laws or, in the absence of such provision, based upon the Unit's percentage interest in the Common Elements;

(ii) Common charges of the Condominium; and

(iii) If fuel is separately stored with respect to the Unit only, the value of fuel stored with respect to the Unit at the price then charged by Seller's supplier (as determined by a letter or certificate to be obtained by Seller from such supplier), including any sales taxes.

(b) If at the time of Closing the Unit is affected by an assessment which is or may become payable in installments, then, for the purposes of this Contract, only the unpaid installments which are then due shall be considered due and are to be paid by Seller at the Closing. All subsequent installments at the time of Closing shall be the obligation of Purchaser.

(c) Any errors or omissions in computing closing adjustments shall be corrected. This subpara. 7c shall survive the Closing.

(d) If the Unit is located in the City of New York, the "customs in respect to title closings" recommended by The Real Estate Board of New York, Inc., as amended and in effect on the date of Closing, shall apply to the adjustments and other matters therein mentioned, except as otherwise provided herein.

8. Right of First Refusal: If so provided in the Declaration or By-Laws, this sale is subject to and conditioned upon the waiver of a right of first refusal to purchase the Unit held by the Condominium and exercisable by the Board. Seller agrees to give notice promptly to the Board of the contemplated sale of the Unit to Purchaser, which notice shall be given in accordance with the terms of the Declaration and By-Laws, and Purchaser agrees to provide promptly all applications, information and references reasonably requested by the Board. If the Board shall exercise such right of first refusal, Seller shall promptly refund to Purchaser the Downpayment (which term, for all purposes of this contract, shall be deemed to include interest, if any, earned thereon, and title charges including but not limited to examination of title and departmental charges) and upon the making

of such refund this Contract shall be deemed cancelled and of no further force or effect and neither party shall have any further rights against, or obligation or liabilities to, the other by reason of this contract. If the Board shall fail to exercise such right of first refusal within the time and in the manner provided for in the Declaration or By-Laws or shall declare in writing its intention not to exercise such right of first refusal (a copy of which writing shall be delivered to Purchaser promptly following receipt thereof), the parties hereto shall proceed with this sale in accordance with the provisions of this contract.

9. Processing Fee: Seller shall, at the Closing, pay all fees and charges payable to the Condominium (and/or its managing agent) in connection with this sale, including, but not limited to, any processing fee, the legal fees, if any, of the condominium's attorney in connection with this sale and, unless otherwise agreed to by Seller and Purchaser in writing, all "flip taxes," transfer or entrance fees or similar charges, if any, payable to or for the 'Condominium or otherwise for the benefit of the Condominium unit owners, which arise by reason of this sale. Said fees, as disclosed by the Declaration, are as follows:

10. No Other Representations: Purchaser has examined and is satisfied with the Declaration, By-Laws and rules and regulations of the Condominium as amended, or has waived the examination thereof. Purchaser has inspected the Unit, its fixtures, appliances and equipment and the personal property, if any, included in this sale, as well as the Common Elements of the Condominium, and knows the condition thereof and, subject to subpara. 5(f), agrees to accept the same "as is," i.e., in the condition they are in on the date hereof, subject to normal use, wear and tear between the date hereof and the Closing. Purchaser has examined or waived examination of the last audited financial statements of the Condominium, and has considered or waived consideration of all other matters pertaining to this Contract and to the purchase to be made hereunder, and does not rely on any representations made by any broker or by seller or anyone acting or purporting to act on behalf of Seller as to any matters which might influence or affect the decision to execute this Contract or to buy the Unit, or said personal property, except those representations and warranties which are specifically set forth in this Contract.

11. Possession: Seller shall, at or prior to the Closing, remove from the Unit all furniture, furnishings and other personal property not included in this sale, shall repair any damage caused by such removal, and shall deliver exclusive possession of the Unit at the Closing, vacant, broom-clean and free of tenancies or other rights of use or possession.

12. Access: Seller shall permit Purchaser and its architect, decorator or other authorized persons to have the right of access to the Unit between the date hereof and the Closing for the purpose of inspecting the same and taking measurements, at reasonable times and upon reasonable prior notice to Seller (by telephone or otherwise). Further, Purchaser shall have the right to inspect the Unit at a reasonable time during the 24-hour period immediately preceding the Closing.

13. Defaults and Remedies: (a) If purchaser defaults hereunder, Seller's sole remedy shall be to retain the Downpayment as liquidated damages, it being agreed that Seller's damages in case of Purchaser's default might be impossible to ascertain and that the Downpayment constitutes a fair and reasonable amount of damages under the circumstances and is not a penalty.

(b) If Seller defaults hereunder, Purchaser shall have such remedies as Purchaser shall be entitled to at law or in equity, including, but not limited to, specific performance.

14. Notices: Any notice, request or other communication ("Notice") given or made hereunder (except for the notice required by para. 12), shall be in writing and either (a) sent by any of the parties hereto or their respective attorneys, by registered or certified mail, return receipt requested, postage prepaid, or (b) delivered in person or by overnight courier, with receipt acknowledged, to the address given at the beginning of this Contract for the party to whom the Notice is to be given, or to such other address for such party as said party shall hereafter designate by Notice given to the other party pursuant to this para. 14. Each Notice mailed shall be deemed given on the fourth business day following the date of mailing and each Notice delivered in person or by overnight courier shall be deemed given when delivered.

15. Purchaser's Lien: The Downpayment and all other sums paid on account of this Contract and the reasonable expenses of the examination of title, and departmental violation searches in respect of, the Unit are hereby made a lien upon the Unit, but such lien shall not continue after default by Purchaser.

16. Downpayment in Escrow: (a) Seller's attorney ("Escrowee") shall hold the Downpayment for Seller's account in escrow in a segregated bank account at the depository identified at the end of this Contract until Closing or sooner termination of this Contract and shall pay over or apply the Downpayment in accordance with the terms of this para.16. Escrowee shall *(not) (Delete if inapplicable)* hold the Downpayment in an interest-bearing account for the benefit of the parties. If interest is held for the benefit of the parties, it shall be paid to the party entitled to the Downpayment and the party receiving the interest shall pay any in-come taxes thereon. If interest is not held for the benefit of the parties, the Downpayment shall be placed in an IOLA account or as otherwise permitted or required by law. The Social Security or Federal Identification numbers of the parties shall be furnished to Escrowee at the end of this contract. At closing, the Downpayment shall be paid by Escrowee to Seller. If for any reason Closing does not occur and either party gives Notice (as defined in para.14) to Escrowee demanding payment of the Downpayment, Escrowee shall give prompt Notice to the other party of such demand. If Escrowee does not receive such Notice of objection within such 10 day period or if for any other reason Escrowee in good faith shall elect not to make such payment, Escrowee shall continue to hold such amount until otherwise directed by Notice from the parties to this Contract or a final, nonappealable judgment, order or decree of a court of competent jurisdiction.

However, Escrowee shall have the right at any time to deposit the Downpayment with the clerk of a court in the county in which the Unit is located and shall give Notice of such deposit to Seller and Purchaser. Upon such deposit or other disbursement in accordance with the terms of this para. 16, Escrowee shall be relieved and discharged of all further obligations and responsibilities hereunder.

(b) The parties acknowledge that, although Escrowee is holding the Downpayment for Seller's account, for all other purposes Escrowee is acting solely as a stakeholder at the request of the parties and for their convenience and that Escrowee shall not be liable to either party for any act or omission on its part unless taken or suffered in bad faith or in willful disregard of this Contract or involving gross negligence on the part of Escrowee. Seller and Purchaser jointly and severally agree to defend, indemnify and hold Escrowee harmless from and against all costs, claims and expenses (including reasonable attorneys' fees) incurred in connection with the performance of Escrowee's duties hereunder, except with respect to actions or omissions taken or suffered by Escrowee in bad faith or in willful disregard of this Contract or involving gross negligence on the part of Escrowee.

(c) Escrowee may act or refrain from acting in respect of any matter referred to herein in full reliance upon and with the advice of counsel which may be selected by it (including any member of its firm) and shall be fully protected in so acting or refraining from action upon the advice of such counsel.

(d) Escrowee acknowledges receipt of the Downpayment by check subject to collection and Escrowee's agreement to the provisions of this para. 16 by signing in the place indicated in this Contract.

(e) Escrowee or any member of its firm shall be permitted to act as counsel for Seller in any dispute as to the disbursement of the Downpayment or any other dispute between the parties whether or not Escrowee is in possession of the Downpayment and continues to act as Escrowee.

17. FIRPTA: Seller represents and warrants to Purchaser that Seller is not a "foreign person" as defined in IRC β 1445, as amended, and the regulations issued thereunder ("Code Withholding Section"). At the Closing Seller shall deliver to Purchaser a certification stating that Seller is not a foreign person in the form then required by the Code Withholding Section. In the event Seller fails to deliver the aforesaid certification or in the event that Purchaser is not entitled under the Code Withholding Section to rely on such certification, Purchaser shall deduct and withhold from the Purchase Price a sum equal to 10% thereof and shall at Closing remit the withheld amount with the required forms to the Internal Revenue Service.

18. Title Report; Acceptable Title: (a) Purchaser shall promptly after the date hereof, or after receipt of the mortgage commitment letter, if applicable, order a title insurance report from the Title Company. Promptly after receipt of the title report and thereafter of any continuation thereof and supplements thereto, Purchaser shall forward a copy of each such report, continuation or supplement to the attorney for Seller. Purchaser shall further notify Seller's attorney of any other objections to title not reflected in such title report of which Purchaser becomes aware following the delivery of such report, reasonably promptly after becoming aware of such objections.

(b) Any unpaid taxes, assessments, water charges and sewer rents, together with the interest and penalties thereon to a date not less than two business days following the date of Closing, and any other liens and encumbrances which Seller is obligated to pay and discharge or which are against corporations, estates or other persons in the chain of title, together with the cost of recording or filing any instruments necessary to discharge such liens and encumbrances of record, may be paid out of the proceeds of the monies payable at the Closing if Seller delivers to Purchaser at the Closing official bills for such taxes, assessments, water charges, sewer rents, interest and penalties and instruments in recordable form sufficient to discharge any other liens and encumbrances of record. Upon request made not less than 3 business days before the Closing, Purchaser shall provide at the Closing separate checks for the foregoing payable to the order of the holder of any such lien, charge or encumbrance and otherwise complying with subpara. 3(b). If the Title Company is willing to insure Purchaser that such charges, liens and encumbrances will not be collected out of or enforced against the Unit and is willing to insure the lien of Purchaser's Institutional Lender (as hereinafter defined) free and clear of any such charges, liens and encumbrances, the Seller shall have the right in lieu of payment and discharge to deposit with the Title Company such funds or give such assurances or to pay such special or additional premiums as the Title Company may require in order to so insure. In such cases the charges, liens and encumbrances with respect to which the Title Company has agreed to insure shall not be considered objections to title.

(c) Seller shall convey and Purchaser shall accept fee simple title to the Unit in accordance with the terms of this Contract, subject only to: (a) the Permitted Exceptions and (b) such other matters as (i) the Title Company or any other title insurer licensed to do business by the State of New York shall be willing, without special or additional premium, to omit as exceptions to coverage or to except with insurance against collection out of or enforcement against the Unit (ii) shall be accepted by any lender which has committed in writing to provide mortgage financing to Purchaser for the purchase of the Unit ("Purchaser's Institutional Lender"), except that if such acceptance by Purchaser's Institutional Lender is unreasonably withheld or delayed, such acceptance shall be deemed to have been given.

(d) Notwithstanding any contrary provisions in the Contract, express or implied, or any contrary rule of law or custom, if Seller shall be unable to convey the Unit in accordance with this Contract (provided that Seller shall release, discharge or otherwise cure at or prior to Closing any matter created by Seller after the date hereof and any existing mortgage, unless this sale is subject to it) and if Purchaser elects not to complete this transaction without abatement of the Purchase Price, the sole obligation and liability of Seller shall be to refund the Downpayment to Purchaser, together with the reasonable cost of the examination of title and departmental violation searches in respect of the Unit, and upon the making of such refund and payment, this Contract shall be deemed cancelled and of no further force or effect and neither party shall have any further rights against, or obligation or liabilities to, the other by reason of this contract. However, nothing contained in the subpara. 19(d) shall be construed to relieve Seller from liability due to a willful default.

19. Risk of Loss; Casualty: (a) The risk of loss or damage to the Unit or the personal property included in this sale, by fire or other casualty, until the earlier of the Closing or possession of the Unit by Purchaser, is assumed by Seller, but without any obligation of Seller to repair or replace any such loss or damage unless Seller elects to do so as hereinafter provided. Seller shall notify Purchaser of the occurrence of any such loss or damage to the Unit or the personal property included in this sale within 10 days after such occurrence or by the date of Closing, whichever first occurs, and by such notice shall state whether or not Seller elects to repair or restore the Unit and/or the personal property, as the case may be. If Seller elects to make such repairs and restorations, Seller's notice shall set forth an adjourned date for the Closing, which shall be not more than 60 days after the date of the giving of Seller's notice. If Seller either does not elect to do so or, having elected to make such repairs and restorations, fails to complete the same on or before said adjourned date for the Closing, Purchaser shall have the following options:

(i) To declare this Contract cancelled and of no further force or effect and receive a refund of the Downpayment in which event neither party shall thereafter have any further rights against, or obligations or liabilities to, the other by reason of this Contract; or

(ii) To complete the purchase in accordance with this Contract with-out reduction in the Purchase Price, except as provided in the next sentence. If Seller carries hazard insurance covering such loss or damage, Seller shall turn over to Purchaser at the Closing the net proceeds actually collected by Seller under the provisions of such hazard insurance policies to the extent that they are attributable to loss of or damage to any property included in this sale, less any sums theretofore expended by Seller in repairing or replacing such loss or damage or in collecting such proceeds; and Seller shall assign (without recourse to Seller) Seller's right to receive any additional insurance proceeds which are at-attributable to the loss of or damage to any property included in this sale.

(b) If seller does not elect to make such repairs and restorations, Purchaser may exercise the resulting option under (i) or (ii) of (a) above only by notice given to Seller within 10 days after receipt of Seller's notice. If Seller elects to make such repairs and restorations and fails to complete the same on or before the adjourned closing date, Purchaser may exercise either of the resulting options within 10 days after the adjourned closing date.

(c) In the event of any loss of or damage to the Common Elements which materially and adversely affects access to or use of the Unit, arising after the date of this Contract but prior to the Closing, Seller shall notify Purchaser of the occurrence thereof within 10 days after such occurrence or by the date of Closing, whichever occurs first, in which event Purchaser shall have the following options:

(i) To complete the purchase in accordance with this Contract without reduction in the Purchase Price; or

(ii) To adjourn the Closing until the first to occur of (1) completion of the repair and restoration of the loss or damage to the point that there is no longer a materially adverse effect on the access to or use of the Unit or (2) the 60th day after the date of the giving of Seller's aforesaid notice. In the event Purchaser elects to adjourn the Closing as aforesaid and such loss or damage is not so repaired and restored within 60 days after the date of the giving of Seller's aforesaid notice, then Purchaser shall have the right either to (x) complete the purchase in accordance with this Contract without reduction in the Purchase Price or (y) declare this Contract cancelled and of no further force or effect and receive a refund of the Downpayment, in which latter event neither party shall thereafter have any further rights against, or obligations or liabilities to, the other by reason of this Contract.

(d) In the event of any loss of or damage to the Common Elements which does not materially and adversely affect access to or use of the Unit, Purchaser shall accept title to the Unit in accordance with this Contract without abatement of the Purchase Price.

20. Internal Revenue Service Reporting Requirement: Each party shall execute, acknowledge and deliver to the other party such instruments, and take such other actions, as such other party may reasonably request in order to comply with IRC β 6045(e), as amended, or any successor provision or any regulations promulgated pursuant thereto, insofar as the same requires reporting of information in respect of real estate transactions. The provisions of this para. 20 shall survive the Closing. The parties designate Purchaser's attorney _____ as the attorney responsible for reporting this information as required by the Internal Revenue Code.

21. Broker: Seller and Purchaser represent and warrant to each other that the only real estate broker with whom they have dealt in connection with this Contract and the transaction set forth herein is The Corcoran Group and Douglas Elliman and that they know of no other real estate broker who has claimed or may have the right to claim a commission in connection with this transaction. The commission of such real estate shall be paid by Seller pursuant to separate agreement. If no real estate broker is specified above, the parties acknowledge that this Contract was brought about by

24

direct negotiation between Seller and Purchaser and each represents to the other that it knows of no real estate broker entitled to a commission in connection with this transaction. Seller and Purchaser shall indemnify and defend each other against any costs, claims or expenses (including reasonable attorneys' fees) arising out of the breach of any representation, warranty or agreement contained in this para. 21. The provisions of this para. 21 shall survive the Closing or, if the Closing does not occur, the termination of this Contract.

22. Mortgage Contingency. (Delete if inapplicable) (a) The obligations of Purchaser hereunder are conditioned upon issuance on or before N/A (the "Commitment Date") of a written commitment from any Institutional Lender pursuant to which such Institutional Lender agrees to make a loan, other than a VA, FHA or other governmentally insured loan to Purchaser, at Purchaser's sole cost and expense, of $ N/A or such lesser sum as Purchaser shall be willing to accept at the prevailing fixed rate of interest not to exceed N/A or initial adjustment rate of interest not to exceed N/A for a term of at least N/A years and on other customary commitment terms, whether or not conditioned upon any factor other than an appraisal satisfactory to the Institutional Lender, secured by a first mortgage on the Unit together with its undivided interest in the Common Elements. Purchaser shall (i) make prompt application to an Institutional Lender for such mortgage loan, (ii) furnish accurate and complete information on Purchaser and members of Purchaser's family, as required, (iii) pay all fees, points and charges required in connection with such application and loan, (iv) pursue such application with diligence, (v) cooperate in good faith with such Institutional Lender to the end of securing such first mortgage loan and (vi) promptly give Notice to Seller of the name and address of each Institutional Lender to which Purchaser has made such application. Purchaser shall comply with all requirements of such commitment (or of any commitment accepted by Purchaser) and shall furnish Seller with a copy thereof promptly after receipt thereof. If such commitment is not issued on or before the Commitment Date, then, unless Purchaser has accepted a commitment that does not comply with the requirements set forth above, Purchaser may cancel this Contract by giving Notice to Seller within 5 business days after the Commitment Date, in which case this Contract shall be deemed cancelled and thereafter neither party shall have any further rights against, or obligation or liabilities to, the other by reason of this Contract, except that the Downpayment shall be promptly refunded to Purchaser and except as set forth in para. 21. If Purchaser fails to give Notice of cancellation or if Purchaser shall accept a commitment that does not comply with the terms set forth above, the Purchaser shall be deemed to have waived Purchaser's right to cancel this Contract and to receive a refund of the Downpayment by reason of the contingency contained in this para. 22.

(b) For purposes of this Contract, an "Institutional Lender" is any bank, savings bank, private banker, trust company, savings and loan association and credit union or similar banking institution whether

organized under the laws of this state, the United States or any other state; foreign banking corporation licensed by the Superintendent of Banks of New York or the Comptroller of the Currency to transact business in New York State; insurance company duly organized or licensed to do business in New York State; insurance company duly organized or licensed to do business in New York State; mortgage banker licensed pursuant to Article 12-D of the Banking Law; and any instrumentality created by the United States or any state with the power to make mortgage loans.

(Delete if inapplicable) (c) Purchaser and Seller agree that the submission of an application to a mortgage broker registered pursuant to Article 12-D of the New York Banking Law ("Mortgage Broker") shall constitute full compliance with the terms and conditions set forth in para. 22(a)(i) of this Contract, and that Purchaser's cooperation in good faith with such Mortgage Broker to obtain a commitment from an Institutional Lender (together with Purchaser's cooperation in good faith with any Institutional Lender to which Purchaser's application has been submitted by such Mortgage Broker), and the prompt giving of Notice by Purchaser to Seller of the name and address of each Mortgage Broker to which Purchaser has submitted such an application shall constitute full compliance with the terms and conditions set forth in para. 22 and (vi) of this Contract.

23. Gender: As used in this Contract, the neuter includes the masculine and feminine, the singular includes the plural and the plural includes the singular, as the context may require.

24. Entire Contract: All prior understandings and agreements, written or oral, between Seller and Purchaser are merged in the Contract and this Contract supersedes any and all understandings and agreements between the parties and constitutes the entire agreement between them with respect to the subject matter hereof.

25. Captions: The captions in this Contract are for convenience and reference only and in no way define, limit or describe the scope of this Contract and shall not be considered in the interpretation of this Contract or any provision hereof.

26. No Assignment by Purchaser: Purchaser may not assign this Contract or any of Purchaser's rights hereunder.

27. Successors and Assigns: Subject to the provisions of para. 26, the provisions of this Contract shall bind and inure to the benefit of the Purchaser and Seller and their respective distributees, executors, administrators, heirs, legal representatives, successors and permitted assigns.

28. No Oral Changes: This Contract cannot be changed or terminated orally. Any changes or additional provisions must be set forth in a rider attached hereto or in a separate written agreement signed by both parties to this Contract.

29. Contract Not Binding Until Signed: This Contract shall not be binding or effective until properly executed and delivered by Seller and Purchaser.



Jan 18 13 12:17p      CSI                                          1 323 870 0940                    p.8

*In Witness Whereof,* the parties hereto have duly executed this Construction this day and year first above written.

AMADEUS TRUST 87

X _____

Howard Ehrenberg, in his sole and limited capacity Chapter 7 Trustee of the Bankruptcy Estate of Claire Levine, as Trustee of the Amadeus Trust

26

*Howard Ehrenberg, in his Sole and limited capacity as
Chapter 7 Trustee of the Amadeus Trust*

Rider to Residential Condominium Contract of Sale
Between
Gerald Goldstein and ~~Claire Levine~~, as Trustees of the Amadeus Trust ("Seller")
And
Jason E. Phillips Trust ("Purchaser")
For
Unit 4D at 15 East 69th Street, New York, New York (the "Premises")

30.    CONFLICT: In the event of a conflict between the terms of the printed portion of the Contract and the terms of this Rider, the terms of this Rider shall control, govern and prevail and the contradicted and/or inconsistent provisions of the main body of the Contract shall be deemed amended and superseded accordingly.

31.    OBJECTIONS TO TITLE: In the event Seller is unable to transfer title to the Unit in accordance with the terms of this Contract due to the existence of a violation, title defect or for any other reason, Seller shall be given, if Seller should so elect, a reasonable opportunity to cure any such violation, defect or other matter, not to exceed 60 days from the closing date set forth in this Contract. Seller shall not be required, however, to bring any action or proceeding in any court to correct any violation or to obtain certificates, nor shall Seller have any obligation to expend any sums in excess of $25,000.00 to correct or cure such violation, title defect or other matter. In lieu of bringing any action or proceeding or expending any sum of money in excess of $25,000.00, Seller may cancel this Contract and refund the Downpayment to Purchaser, unless Purchaser is willing to accept the Unit subject to such violation, title defect or other matter.

32.    REPRESENTATIONS: NON-SURVIVAL: Purchaser expressly acknowledges, agrees and represents that no broker, representative, agent, employee, or attorney of Seller previously did or does now make, and Purchaser is not relying upon, and has not been induced to enter into this Contract on the basis of, any warranties, representations, information, broker setups, inducements, or other statements (expressed or implied) as to the past, present or future physical condition of the Premises, except as and only to the extent in this Contract specifically set forth. Acceptance by Purchaser of the deed at closing shall be and be deemed to be full compliance, performance and discharge of every agreement, representation and obligation expressed or implied (other than as required by Law) on the part of Seller and no representation, warranty or guarantee of Seller shall be deemed to survive the earlier of closing or possession by Purchaser or be the basis of any claim against Seller unless specifically and expressly stated in this Contract to survive. Purchaser acknowledges and agrees that the representations and warranties of Howard Ehrenberg, in his sole and limited capacity as Chapter 7 Trustee of the Bankruptcy Estate of Claire Levine ("Bankruptcy Trustee"), as Trustee of the Amadeus Trust are expressly limited to the actual knowledge of Bankruptcy Trustee without any duty of inquiry.

33.    Normal and expected marks, holes and wall and floor discoloration left behind as a result of any item of personal property, including but not limited to flat-screen televisions, which Seller is entitled to remove shall not be deemed a reason to withhold or escrow any sums hereunder.

1

27

34.    Purchaser represents that he/she has never filed for bankruptcy and has no knowledge of any judgments or liens against him/her.

35.    Seller shall be entitled to the payment of any tax refunds, credits or overpayments for taxes paid during the time that Seller owned the Unit. In the event Purchaser receives a real estate tax refund or credit for taxes paid during the time that Seller owned the Unit, either by a direct payment or credit against amounts owed, Purchaser shall apportion the refund (if necessary) and promptly remit the amount owed to Seller. This provision shall survive the Closing for a period of one year.

36.    All notices, demands and requests (herein collectively called "notices"), which are required or desired to be given by either party to the other hereunder shall be in writing and sent by (a) hand or (b) Federal Express or other overnight delivery service which provides for receipts, in either event addressed to the intended party at its address as indicated above. Copies of notices shall be sent first class mail or telecopier to the parties indicated below:

If to Purchaser:

> Sandor Krauss, Esq.
> Law Office of Sandor Krauss
> 1040 Avenue of the Americas, Suite 1101
> New York, NY 10016
> Telephone: 212-764-3377
> Telecopier: 212-656-1543

If to Seller:

> Federman Steifman LLP
> 220 East 42nd Street, 29th Floor
> New York, NY 10017
> Attn: Seth P. Steifman, Esq.
> Telephone: 212-994-9963
> Telecopier: 212-685-5199

37.    This Contract may be executed in any number of counterparts. Each such counterpart shall for all purposes be deemed to be an original, and all such counterparts shall together constitute and be but one and the same instruments. Faxed signatures and/or emailed, scanned signatures shall be deemed to be originals for the purpose of this Contract.

38.    Purchaser shall submit his/her board application to Seller's real estate broker (for submission to the condominium association and/or managing agent) within fifteen (15) calendar days from the date of this contract, but shall not be deemed a Purchaser default unless Seller

2

28

notifies Purchaser's attorney, by email, of said default and Purchaser fails to cure within 5 business days thereafter.

39.    Supplementing Paragraph 9 of the pre-printed portion of this contract, Purchasers shall, at or prior to closing, pay all fees and charges specifically imposed by the Condominium or its managing agent on Purchaser. In the event the Condominium or its managing agent fails to designate which party shall pay each fee, Purchaser shall pay any and all fees customarily designated to Purchaser, including but not limited to application fees, move-in fees and or deposits and Seller shall pay and all fees customarily designated to Seller. Notwithstanding anything to the contrary contained in this Contract or the purchase application, Seller shall pay the entire "flip tax" or transfer fee, which currently is 2% of the Purchase Price.

40.    Intentionally Omitted.

41.    Purchaser acknowledges that (a) Claire Levine, a trustee of the Amadeus Trust, has filed for relief under Chapter 7 of the United States Bankruptcy Code, as such may be amended from time to time (the "Bankruptcy Code"), that such case is presently pending in the United States Bankruptcy Court for the Central District of California (the "Bankruptcy Court"), and that the Bankruptcy Trustee has been appointed by the Bankruptcy Court to administer the bankruptcy estate of Claire Levine; (b) this Contract, and the transactions contemplated herein, are contingent upon the approval of the Bankruptcy Court, and the entry of a final order from the Bankruptcy Court approving this Contract in form and substance reasonably acceptable to Bankruptcy Trustee (a "Final Order") and the transactions contemplated herein shall be a condition precedent to Seller performing its obligations hereunder; (c) by way of illustration and not of limitation, the consummation of the transactions contemplated in this Contract is subject to overbid in the Bankruptcy Court; and (d) unless sooner terminated pursuant to the terms and conditions of this Contract, in the event that Seller fails to obtain a Final Order prior to the Closing, (i) provided Purchaser is not otherwise in default, as of such date, Escrowee shall refund the Downpayment to Purchaser, and (ii) Seller shall have no further right or obligation to Purchaser, whether under this Contract, at law or in equity."

42.    Subsequent to Bankruptcy Court approval and prior to Closing, Seller shall paint the Unit using colors selected by Purchaser.

**[Signatures Immediately to Follow]**

3

29

39.    Supplementing Paragraph 9 of the pre-printed portion of this contract. Purchaser shall, at or prior to closing, pay all fees and charges specifically imposed by the Condominium or its managing agent on Purchaser. In the event the Condominium or its managing agent fails to designate which party shall pay each fee, Purchaser shall pay any and all fees customarily designated to Purchaser, including but not limited to application fees, move-in fees and/or deposits and Seller shall pay and all fees customarily designated to Seller. Notwithstanding anything to the contrary contained in this Contract or the purchase application, Seller shall pay the entire "flip tax" or transfer fee, which currently is 2% of the Purchase Price.

40.    ~~This Contract shall be ... accordingly, Purchaser shall be ...~~    7C

41.    ~~This Contract shall be contingent on the approval of a California Bankruptcy Court of competent jurisdiction. In the event Seller fails to obtain such approval prior to Closing, Seller shall promptly refund the Downpayment, in full, to Purchaser and the parties will have no further rights or obligations to each other in connection herewith~~ — See counterpart provision attached.

42.    Subsequent to Bankruptcy Court approval and prior to Closing, Seller shall paint the Unit using colors selected by Purchaser.

[Signatures Immediately to Follow]

_Gerald Goldman, as Trustee_

_Howard Ehrenberg, in his sole and limited capacity as Chapter 7 Trustee of the Bankruptcy Estate of Claire Levine, as Trustee of the Amadeus Trust_

~~Howard Ehrenberg, Chapter 7 Trustee of the Bankruptcy Estate of Claire Levine~~

_Jason E. Hudkins Trust_

30

RIDER ANNEXED TO AND FORMING A PART OF THE CONTRACT OF SALE, DATED JANUARY 18, 2013 BETWEEN GERALD GOLDSTEIN AND CLAIRE LEVINE AS TRUSTEES OF THE AMADEUS TRUST("SELLER") AND JASON E. PHILLIPS TRUST ("PURCHASER"), FOR UNIT 4D IN THE BUILDING KNOWN AS THE 15 EAST 69TH STREET CONDOMINIUM, LOCATED AT 15 EAST 69TH STREET, NEW YORK, NEW YORK.

A.    In the event the pre-printed portions of the Contract of Sale, the Seller's Rider and this Rider appear to conflict, then the terms of this Rider shall supersede the pre-printed portions of the Contract of Sale and the Seller's Rider.

B.    The failure of either party to insist upon the performance of any obligation to be performed by the other party shall not be deemed to be a waiver thereof or of any preceding or succeeding breach thereof or of any other obligation. No provision of this Contract may be waived except by a writing signed by the party waiving any provision hereof. The waiver of any breach of this Contract shall not be deemed a waiver of any preceding or subsequent breach of the same obligation, or of any other obligation, to be performed hereunder. No extensions of time for the performance of any obligations or acts shall be deemed or construed as an extension of the time for the performance of any other obligations or acts.

C.    Seller warrants and represents that the appliances, outlets, plumbing, heating, electrical and air conditioning systems within the Unit, to the extent that the repair and maintenance thereof is the responsibility of the Seller, shall be in working order at the Closing.

D.    Seller warrants and represents that to Seller's knowledge there are currently no water leaks in or into the Unit and there have been no leaks during the twenty four (24) month period immediately preceding the date of this Contract. In addition, Seller has not been notified during said twenty four (24) month period of any water which was purported to emanate from the Unit. Seller further warrants and represents that Seller has not been notified in writing of any noise regarding sound emanating from the Unit and Seller has not made any written complaints regarding sound emanating from any other source into the Unit. Seller further warrants and represents that Seller has not witnessed evidence of and/or has not made or been notified in writing of any foul odor, pest, vermin, rodent or bug infestation complaints, generally. Seller further warrants and represents that Seller has not witnessed evidence of and/or has not made or been notified, or in writing, of any lack of heat, hot water or inadequate water pressure affecting the Unit.

E.    Seller shall promptly deliver to Purchaser any and all material written notices it receives from the Condominium between the date hereof and the date of closing, including but not limited to notices regarding assessments (this provision does not apply to recurring notices such as monthly common charge invoices and the like). Failure to deliver said notices shall not be deemed a Seller default.

F.    Seller represents that to Seller's knowledge there are currently no bed bugs in the Unit and to Seller's knowledge there have been no bed bugs in the Unit during the twenty four (24) month period immediately preceding the date of this Contract.

G.    Seller represents that to Seller's knowledge there is currently no mold in the Unit and that to Seller's knowledge there has not been any mold in the Unit during the twenty four (24) month period immediately preceding the date of this Contract.

H.    Seller warrants and represents that to Seller's knowledge no alterations or additions have been made to the Unit by Seller except in accordance with the rules and bylaws of the Condominium and any applicable governmental rule, regulation, law or order. Seller further warrants and represents that Seller has made no alterations which require amendment of the buildings Certificate of Occupancy. In the event Seller has made alterations to the Unit, Seller agrees to furnish, prior to the Closing, copies of all alteration agreements between Seller and the Condominium or the Managing Agent, and all permits, approvals and any and all documents received from the Condominium or any governmental authority, to the extent such documents were necessary in connection with any alteration(s) of, or addition(s) to, the Unit made by Seller and to the extent they are in Seller's actual possession. To Seller's knowledge, there exist no claims by the Condominium or any governmental authority for failure to comply with the rules of the Condominium or any applicable law regarding alteration of the Unit.

I.    To the extent the same are in Seller's possession, custody or control, Seller shall, at Closing, deliver and/or assign to Purchaser physical possession of any assignable warranties and instructions with respect to the fixtures, appliances, equipment, electrical, plumbing, heating, ventilation systems, mechanical systems and air conditioning systems located within the Unit, and any plans and specifications with respect to any alterations, additions, improvements and/or repairs to the Unit.

J.    Seller, to Seller's knowledge, warrants and represents, and covenants and agrees to Purchaser as follows:

(1)    The execution of this Contract, and Seller's performance hereunder, does not, to Seller's knowledge, violate any judgment, order, injunction, decree or award of any court, administrative agency or governmental body applicable to Seller or the Unit, notwithstanding Purchaser acknowledges said Seller is subject to CA bankruptcy court approval;

(2)    The Unit and the present use and condition thereof do not, to Seller's knowledge, violate any rules and regulations promulgated or adopted by the Condominium Board of Managers, that are applicable to the Unit;

(3)    There is no action or proceeding, to the actual knowledge of Seller, threatened against or relating to Seller, the Unit or the transaction contemplated by this Contract other than matter pending in CA bankruptcy court;



(4)    The fixtures and personal property included in this sale are now and will on the date of Closing be owned by Seller free and clear of any liens, encumbrances, conditional bills of sale, chattel mortgages, security agreements, financing statements and other security interests;.

(5)    To the best of Seller's knowledge there are presently no liens, judgments, encumbrances, mortgages, loans or violations upon the Unit or, where applicable, against Sellers that will exceed the proceeds of Closing. As to any violations, encumbrances, liens or judgments upon the Unit, or where applicable against Sellers, including mortgages or loans which have balances in excess of the proceeds net of brokerage commissions and other closing expenses, Seller shall pay same and obtain the appropriate releases.

K.    Seller represents that this is not a "short sale" as the term is customarily used.

L.    Seller agrees to indemnify and hold harmless Purchaser from and against all and any fees, costs, claims and/or liability, including but not limited to reasonable attorney's fees that may accrue as a result of Seller's failure to file and pay the New York City and/or New York State transfer taxes. Purchaser shall pay the "mansion tax" and indemnify Seller in connection with same.

M.    In the event of the death of either Purchaser, then the executor or administrator of said deceased Purchaser's estate shall have the sole right to terminate this Contract provided written notice of termination is sent within thirty (30) days after the occurrence of such death. All respective obligations of the parties under the Contract shall thereupon cease and be of no further force and effect and the deceased Purchaser's estate shall immediately obtain a full refund of the Downpayment.

N.    Intentionally Omitted.

O.    All dates and contingencies set forth herein shall be deemed effective as of the date Purchaser or Purchaser's attorney receives a fully executed original of this Contract.

P.    The Contract of Sale and all Riders may be signed in counterparts with the same effect as if executed singularly. The delivery of an executed counterpart of this Contract, whether with original duplicate or facsimile (including a PDF copy sent via email) signatures, executed by a party shall have the same force and effect as if such party had delivered an original signature on this Agreement.

33

Jan 18 13 12:22p        CSI                                    1 323.870 0940              p.16

SELLER:

Dated January 18, 2013

TRUSTEE

Howard Ehrenberg, in his sole and limited capacity as Chapter 7 Trustee of the Bankruptcy Estate of Claire Levine, as Trustee of the Amadeus Trust

PURCHASER:

Dated January 17, 2013

Jan 18 13 12:19p    CSI

Disclosure of Information on Lead-Based Paint and/or Lead-Based Paint Hazards

**Lead Warning Statement**

Every purchaser of any interest in residential real property on which a residential dwelling was built prior to 1978 is notified that such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced intelligence quotient, behavioral problems, and impaired memory. Lead poisoning also poses a particular risk to pregnant women. The seller of any interest in residential real property is required to provide the buyer with any information on lead-based paint hazards from risk assessments or inspections in the seller's possession and notify the buyer of any known lead-based paint hazards. A risk assessment or inspection for possible lead-based paint hazards is recommended prior to purchase.

**Seller's Disclosure**

(a) Presence of lead-based paint and/or lead-based paint hazards (check (i) or (ii) below):

  (i) ☐ Known lead-based paint and/or lead-based paint hazards are present in the housing (explain).

  _____

  (ii) ☒ Seller has no knowledge of lead-based paint and/or lead-based paint hazards in the housing.

(b) Records and reports available to the seller (check (i) or (ii) below):

  (i) ☐ Seller has provided the purchaser with all available records and reports pertaining to lead-based paint and/or lead-based paint hazards in the housing (list documents below).

  _____

  ☒ Seller has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing.

**Purchaser's Acknowledgment**

(c) _✓_ Purchaser has received copies of all information listed above.

(d) _✓_ Purchaser has received the pamphlet *Protect Your Family from Lead in Your Home*.

(e) Purchaser has (check (i) or (ii) below):

  (i) ☐ received a 10-day opportunity (or mutually agreed upon period) to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards; or

  (ii) ☒ waived the opportunity to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards.

**Agent's Acknowledgment (initial)**

(f) _____ Agent has informed the seller of the seller's obligations under 42 U.S.C. 4852(d) and is aware of his/her responsibility to ensure compliance.

**Certification of Accuracy**

The following parties have reviewed the information above and certify, to the best of their knowledge, that the information they have provided is true and accurate.

| | | | | |
|---|---|---|---|---|
| _signature_ Trustee 1/18/13 | | Seller _signature_ 1/18/13 | | |
| Seller | Date | Seller | | Date |
| _signature_ 1/17/13 | | Purchaser | | |
| Purchaser | Date | Purchaser | | Date |
| Agent | Date | Agent | | Date |

Howard Ehrenberg, in his sole and limited capacity, as Chapter 7 Trustee of the Bankruptcy Estate of Claire Levine, as Trustee of the Amadeus Trust

# EXHIBIT B

B6A (Official Form 6A) (12/07)

IN RE Levine, Claire                                                          Case No. _____
_____                                              (If known)
             Debtor(s)

## SCHEDULE A - REAL PROPERTY

Except as directed below, list all real property in which the debtor has any legal, equitable, or future interest, including all property owned as a cotenant, community property, or in which the debtor has a life estate. Include any property in which the debtor holds rights and powers exercisable for the debtor's own benefit. If the debtor is married, state whether the husband, wife, both, or the marital community own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor holds no interest in real property, write "None" under "Description and Location of Property."

Do not include interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.

If an entity claims to have a lien or hold a secured interest in any property, state the amount of the secured claim. See Schedule D. If no entity claims to hold a secured interest in the property, write "None" in the column labeled "Amount of Secured Claim."

If the debtor is an individual or if a joint petition is filed, state the amount of any exemption claimed in the property only in Schedule C - Property Claimed as Exempt.

| DESCRIPTION AND LOCATION OF PROPERTY | NATURE OF DEBTOR'S INTEREST IN PROPERTY | HUSBAND, WIFE, JOINT, OR COMMUNITY | CURRENT VALUE OF DEBTOR'S INTEREST IN PROPERTY WITHOUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION | AMOUNT OF SECURED CLAIM |
|---|---|---|---|---|
| 1027 Napoli Drive, Pacific Palisades, CA 90272 | | | 6,000,000.00 | 12,352,393.13 |
| 11847 Gorham Ave., #303, Los Angeles, CA 90049 | | | 750,000.00 | 720,000.00 |
| 15 E 69th St., #4D, New York, NY 10021 | | | 6,000,000.00 | 3,800,000.00 |
| 3800 Wailea Alanui, B101, Wailea, Maui, HI 96753 | | | 12,500,000.00 | 6,700,000.00 |
| 3800 Wailea Alanui, E201, Wailea, Maui, HI 96753 | | | 4,000,000.00 | 4,950,000.00 |
| 888 Napoli Drive, Pacific Palisades, CA 90272, single family residence | | | 12,000,000.00 | 8,988,756.91 |
| | | TOTAL | 41,250,000.00 | |

(Report also on Summary of Schedules)

© 1993-2011 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

36

B6D (Official Form 6D) (12/07)

IN RE Levine, Claire
_____
Debtor(s)

Case No. _____
(If known)

## SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number of all entities holding claims secured by property of the debtor as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. List creditors holding all types of secured interests such as judgment liens, garnishments, statutory liens, mortgages, deeds of trust, and other security interests.

List creditors in alphabetical order to the extent practicable. If a minor child is the creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). If all secured creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor," include the entity on the appropriate schedule of creditors, and complete Schedule H – Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community."

If the claim is contingent, place an "X" in the column labeled "Contingent." If the claim is unliquidated, place an "X" in the column labeled "Unliquidated." If the claim is disputed, place an "X" in the column labeled "Disputed." (You may need to place an "X" in more than one of these three columns.)

Total the columns labeled "Amount of Claim Without Deducting Value of Collateral" and "Unsecured Portion, if Any" in the boxes labeled "Total(s)" on the last sheet of the completed schedule. Report the total from the column labeled "Amount of Claim Without Deducting Value of Collateral" also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report the total from the column labeled "Unsecured Portion, if Any" on the Statistical Summary of Certain Liabilities and Related Data.

☐ Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE AND ACCOUNT NUMBER (See Instructions Above.) | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|
| ACCOUNT NO.<br><br>**Association of Apartmemt Owners Of Wailea Beach Villas**<br>**3750 Wailea Alanui Dr #B-51**<br>**Wailea, HI 96753** | | | <br><br><br>VALUE $ | | | | 0.00 | |
| ACCOUNT NO.<br><br>**Bank Of America**<br>**PO Box 301200**<br>**Los Angeles, CA 90030-1200** | | | **1027 Napoli**<br><br><br>VALUE $ 6,000,000.00 | | | | 3,363,636.22 | |
| ACCOUNT NO. 0607<br><br>**Bank Of America**<br>**Home Loans**<br>**PO Box 260599**<br>**Plano, TX 75026-0599** | | | **2005 purchase of property**<br><br><br>VALUE $ 4,000,000.00 | | | | 4,200,000.00 | 200,000.00 |
| ACCOUNT NO.<br><br>**Bank Of America**<br>**PO Box 301200**<br>**Los Angeles, CA 90030-1200** | | | **1st on Gorham**<br><br><br>VALUE $ 750,000.00 | | | | 500,000.00 | |

___ **2** continuation sheets attached

| | | |
|---|---|---|
| Subtotal (Total of this page) | $ 8,063,636.22 | $ 200,000.00 |
| Total (Use only on last page) | $ | $ |
| | (Report also on Summary of Schedules.) | (If applicable, report also on Statistical Summary of Certain Liabilities and Related Data.) |

© 1993-2011 EZ-Filing, Inc. (1-800-998-2424) - Forms Software Only

37

B6D (Official Form 6D) (12/07) - Cont.

IN RE Levine, Claire                                                    Case No. _____
                          Debtor(s)                                                (If known)

## SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS
### (Continuation Sheet)

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE AND ACCOUNT NUMBER (See Instructions Above.) | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|
| ACCOUNT NO.<br><br>Bank Of America<br>PO Box 301200<br>Los Angeles, CA 90030-1200 | | | 2nd on Gorham<br><br><br>VALUE $ 750,000.00 | | | | 200,000.00 | |
| ACCOUNT NO. 1796<br><br>Capital One Bank<br>7933 Preston Rd.<br>Plano, TX 75024-2359 | | | 1st T.D. on B101 Maui<br><br><br>VALUE $ 12,500,000.00 | | | | 6,200,000.00 | |
| ACCOUNT NO. 5672<br><br>JP Morgan Chase<br>245 Park Ave, Fl 15<br>New York, NY 10017 | | | 15 E 69th St.<br><br><br>VALUE $ 6,000,000.00 | | | X | 3,800,000.00 | |
| ACCOUNT NO.<br><br>Napoli Palasides Partners LLC<br>C/O Michelle Ghidotti<br>31 E. Macarthur Cres. #B203<br>Santa Ana, CA 92707 | | | 888 Napoli Dr. Pacific Palisades, CA<br><br><br>VALUE $ 18,000,000.00 | | | | 8,988,756.91 | |
| ACCOUNT NO.<br><br>Sky Lewis<br>1610 Rawhide St<br>Las Vegas, NV 89119 | | | 2007 purchase money junior lien on both Maui properties<br><br><br>VALUE $ 16,500,000.00 | | | | 500,000.00 | |
| ACCOUNT NO.<br><br>Wailea Alanui<br>HOA<br>3800 Wailea Alanui<br>Wailea, HI 96753 | | | <br><br><br>VALUE $ 4,000,000.00 | | | | 250,000.00 | 250,000.00 |

Sheet no. ___1__ of ___2__ continuation sheets attached to
Schedule of Creditors Holding Secured Claims

Subtotal (Total of this page) $ 19,938,756.91 $ 250,000.00

Total (Use only on last page) $ _____ $ _____

(Report also on Summary of Schedules.) (If applicable, report also on Statistical Summary of Certain Liabilities and Related Data.)

© 1993-2011 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

38

B6D (Official Form 6D) (12/07) - Cont.

IN RE Levine, Claire _____    Case No. _____
                                    Debtor(s)                                                    (If known)

## SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS
### (Continuation Sheet)

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE AND ACCOUNT NUMBER (See Instructions Above.) | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|
| ACCOUNT NO. <br><br>**Westgate Condominium HOA** | | | Hoa Lien on Gorham <br><br> VALUE $ 750,000.00 | | | | 20,000.00 | |
| ACCOUNT NO. | | | <br><br> VALUE $ | | | | | |
| ACCOUNT NO. | | | <br><br> VALUE $ | | | | | |
| ACCOUNT NO. | | | <br><br> VALUE $ | | | | | |
| ACCOUNT NO. | | | <br><br> VALUE $ | | | | | |
| ACCOUNT NO. | | | <br><br> VALUE $ | | | | | |

Sheet no. ___2___ of ___2___ continuation sheets attached to
Schedule of Creditors Holding Secured Claims

Subtotal (Total of this page)  $ 20,000.00  $

Total (Use only on last page)  $ 28,022,393.13  $ 450,000.00

(Report also on Summary of Schedules)  (If applicable, report also on Statistical Summary of Certain Liabilities and Related Data.)

© 1993-2011 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

39

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 333 South Hope Street, Thirty-Fifth Floor, Los Angeles, California 90071-1406.

A true and correct copy of the foregoing document entitled (*specify*): CHAPTER 7 TRUSTEE'S MOTION FOR ORDER (1) AUTHORIZING SALE OF REAL PROPERTY (15 East 69th Street, Unit 4D, New York, New York) FREE AND CLEAR OF LIENS, CLAIMS AND INTERESTS, (2) CONFIRMING SALE TO THIRD PARTY OR THE HIGHEST BIDDER APPEARING AT THE HEARING; (3) DETERMINING THAT BUYER IS A GOOD FAITH PURCHASER; AND (4) WAIVING THE FOURTEEN (14) DAY STAY PRESCRIBED BY RULE 6004(h) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF HOWARD M. EHRENBERG IN SUPPORT THEREOF will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):** Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) January 30, 2013 I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Sean D Allen    sda@sghoalaw.com
- Richard J Bauer    rbauer@mileslegal.com
- Mark Domeyer    mdomeyer@mileslegal.com
- Howard M Ehrenberg (TR)    ehrenbergtrustee@sulmeyerlaw.com, ca25@ecfcbis.com;C123@ecfcbis.com
- Joseph A Eisenberg    jae@jmbm.com
- Michelle R Ghidotti    mghidotti@ghidottilaw.com
- Asa S Hami    ahami@sulmeyerlaw.com
- Mehrdaud Jafarnia    bknotice@mccarthyholthus.com, mjafarnia@mccarthyholthus.com
- Dare Law    dare.law@usdoj.gov
- Daniel A Lev    dlev@sulmeyerlaw.com, asokolowski@sulmeyerlaw.com
- Anne C Manalili    acmecf@laklawyers.com
- Dennis E Mcgoldrick    dmcgoldricklaw@yahoo.com
- Krsto Mijanovic    kmijanovic@hbblaw.com
- Kelly M Raftery    bknotice@mccarthyholthus.com
- Peter J Rudinskas    pjr.legal@gmail.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
- Jennifer C Wong    bknotice@mccarthyholthus.com

☐ Service information continued on attached page.

**2. SERVED BY UNITED STATES MAIL:**
On (*date*) January 30, 2013 , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

The Honorable Ernest M. Robles
U.S. Bankruptcy Court
Roybal Federal Building
Bin outside of Suite 1560
255 E. Temple Street
Los Angeles, CA 90012-3332

☐ Service information continued on attached page.

DLEV\ 2373152.1 1/30/2013 (2:29 PM) This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                    **F 9013-3.1.PROOF.SERVICE**

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (date) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| January 30, 2013 | Denise Givens | /s/Denise Givens |
|---|---|---|
| Date | Printed Name | Signature |

DLEV\ 2373152.1 1/30/2013 (2:29 PM) This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                 **F 9013-3.1.PROOF.SERVICE**