

**FILED & ENTERED**

**NOV 07 2018**

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY gonzalez DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA
# LOS ANGELES DIVISION

| | |
|---|---|
| In re:    Claire Levine,<br>            Debtor. | Case No.:   2:12-bk-22639-ER<br>Chapter:      7<br><br>**MEMORANDUM OF DECISION DENYING MOTION TO RECONSIDER**<br><br>[No hearing required pursuant to Federal Rule of Civil Procedure 78(b) and Local Bankruptcy Rule 9013-1(j)(3)] |

    Peter Rudinskas ("Rudinskas") and Claire Levine (the "Debtor") (collectively, "Movants") move for reconsideration (the "Motion to Reconsider")[1] of the *Order Granting Motion for Relief from the Automatic Stay Under 11 U.S.C. §362* [Doc. No. 650] (the "RFS Order"). Pursuant to Civil Rule 78(b) and LBR 9013-1(j)(3),[2] the Court finds this matter suitable for disposition without a hearing. For the reasons set forth below, the Motion to Reconsider is DENIED.

---

[1] *See* Motion for Limited Amendment of and Relief from Order Granting Pacific Western Bank's Motion for Relief from Recordation Stay as to Maui B-101 Property / Napoli Property [Doc. No. 652].

[2] Unless otherwise indicated, all "Civil Rule" references are to the Federal Rules of Civil Procedure, Rules 1–86; all "Bankruptcy Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037; all "Evidence Rule" references are to the Federal Rules of Evidence, Rules 101–1103; all "LBR" references are to the Local Bankruptcy Rules of the United States Bankruptcy Court for the Central District of California, Rules 1001-1–9075-1; and all statutory references are to the Bankruptcy Code, 11 U.S.C. §§101–1532.

## I. Background

The Debtor commenced a voluntary Chapter 11 petition on April 4, 2012 (the "Petition Date").[3] On July 30, 2012, the case was converted to Chapter 7.[4]

A. The Disallowance of the Proof of Claim Filed by Gerald Goldstein

As of the Petition Date, the Debtor and Gerald Goldstein ("Goldstein") were co-trustees of the Amadeus Trust dated January 24, 2000 (the "Amadeus Trust"). As of the Petition Date, the Amadeus Trust and/or the Debtor and Goldstein held title to six parcels of real property.[5] Four of the properties have been sold, foreclosed upon, or are otherwise no longer within the estate.[6] Two properties are still subject to administration by the Trustee.[7] Those properties are located at 1027 Napoli Drive, Pacific Palisades, CA (the "Napoli Property") and 3800 Wailea Alanui, B101, Maui, HI (the "Wailea Property").[8]

On December 3, 2012, Goldstein filed a proof of claim (the "Goldstein Claim") in the amount of $5,571,022.62. The Goldstein Claim alleged that Debtor, as a co-trustee of the Amadeus Trust and a co-owner of properties held by the trust, was responsible for 50% of the expenses of maintaining the trust properties. The Goldstein Claim alleged that Goldstein paid all the expenses of maintaining the properties, and that the Debtor failed to pay any of the expenses for which she was responsible. Other than the Goldstein Claim, total allowed unsecured claims amount to approximately $80,000.

On July 30, 2018, the Court conducted a trial on the allowability of the Goldstein Claim. On that same date, the Court entered judgment disallowing the Goldstein Claim in its entirety.[9]

B. The State Court Litigation Against Goldstein

Prior to the petition date, the Debtor initiated a palimony action against Goldstein, a high net worth music and entertainment executive (the "2008 Action"). The Debtor alleged that she had rescued Goldstein from financial disaster, saving his home from foreclosure and his business from bankruptcy, and had devoted her time, labor, and capital to Goldstein's music and entertainment businesses, which the parties agreed would be their joint businesses. The Debtor further alleged that Goldstein had siphoned joint assets, concealed asset transfers, and engaged in a course of conduct designed to deny the Debtor her rightful share of the assets of the joint businesses. The Debtor and Goldstein executed a settlement agreement under which the 2008 Action was dismissed without prejudice.

After the 2008 Action was dismissed, the Debtor alleged that instead of complying with his fiduciary obligations to and his agreements with the Debtor, Goldstein undertook a course of conduct that exposed the parties' assets to substantial devaluation. The Debtor commenced a

---

[3] The Hon. Sandra R. Klein presided over proceedings in this case from the Petition Date to July 30, 2012. On July 30, 2012, the case was transferred to the undersigned judge.
[4] *See* Order Converting Case to Chapter 7 Pursuant to the Court's Order to Show Cause [Doc. No. 78] and Court's Tentative Ruling on Order to Show Cause Why Case Should Not be Converted to Chapter 7 Which Was Adopted as the Court's Final Ruling Following Hearing [Doc. No. 77].
[5] *See* Chapter 7 Trustee's Opposition to Pacific Western Bank's Motion for Relief from the Automatic Stay Under 11 U.S.C. §362 [Doc. No. 638] at 5.
[6] *Id.*
[7] *Id.*
[8] *Id.*
[9] *See* Order Granting Debtor's Motion for a Judgment on Partial Findings Pursuant to Civil Rule 52(c) [Doc. No. 636] and Final Ruling Disallowing Goldstein Claim [Doc. No. 635].

second action against Goldstein, which was prosecuted by the Chapter 7 Trustee (the "Trustee") as the real party in interest after the case was converted to Chapter 7. The action was entitled *Howard M. Ehrenberg, Chapter 7 Trustee and Real Party in Interest for Claire Levine v. Gerald Goldstein et al.* (the "Civil Complaint"), and alleged that Goldstein wrongfully withdrew up to $30 million in equity from Levine and Goldstein's jointly-held properties. Civil Complaint at ¶83. The Civil Complaint sought an adjudication that Debtor held an undivided one-half interest in all of the properties, as well as an undivided one-half interest in Goldstein's music and entertainment businesses and assets. *Id.* at ¶156.

On August 22, 2018, the Los Angeles Superior Court (the "State Court") entered a stipulated judgment resolving the Civil Complaint (the "Stipulated Judgment"). The Stipulated Judgment provides, among other things, that Debtor is the sole grantor of the Napoli Property; that the Napoli Property is immediately withdrawn from the Amadeus Trust; and that all remaining property held by the Amadeus Trust shall be the sole property of Goldstein.[10]

C. The Failed Settlement Agreement

On September 24, 2015, the Court approved a global settlement between the Debtor, Goldstein, the Amadeus Trust, and various businesses controlled by Goldstein (the "Original Settlement Agreement").[11] The Original Settlement Agreement was conditioned on the short sale of the Wailea Property to HAR-Bronson ("Bronson").

As a result of the parties' inability to complete the short sale of the Wailea Property, the Original Settlement Agreement was never consummated. On January 19, 2017, the Court approved an Amended Settlement Agreement.[12] Like the Original Settlement Agreement, the Amended Settlement Agreement required the short sale of the Wailea Property, and became "null and void" if the short sale was not completed within 450 days of full execution of the Amended Settlement Agreement.[13] As a result of various issues, including an inability to resolve a lien asserted against the Wailea Property by Trinity Financial Services, the parties were unable to complete the short sale by December 24, 2017, the date 450 days subsequent to full execution of the Amended Settlement Agreement. Consequently, the Amended Settlement Agreement became null and void as of December 24, 2017.

D. The Granting of Stay-Relief to Pacific Western Bank

On December 8, 2014, the Court granted Pacific Western Bank ("PWB") stay-relief to proceed with two state court actions against Goldstein. The Court ordered that the stay would remain in effect with respect to PWB's enforcement of any judgments it obtained against Goldstein, to the extent that such enforcement actions "directly or indirectly impact estate property …."[14]

---

[10] *See* Stipulated Judgment at ¶¶1–4 [Doc. No. 653].
[11] *See* Order, After Hearing, Granting Chapter 7 Trustee's Motion for Order Authorizing Compromise of Controversy Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure Re Gerald Goldstein [Doc. No. 326] and Final Ruling Approving Settlement Agreement [Doc. No. 324].
[12] *See* Order, After Hearing, Granting Motion of Chapter 7 Trustee for Order Authorizing Amendment to Previously Court-Authorized Compromise of Controversy Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure [Doc. No. 427] and Final Ruling Approving Amended Settlement Agreement [Doc. No. 409].
[13] *See* Amended Settlement Agreement at ¶2a [Doc. No. 373, Ex. 1].
[14] *See* Final Ruling Granting PWB's Motion for Relief from the Automatic Stay [Doc. No. 299] at 3.

On July 8, 2016, PWB obtained state court judgments against Goldstein in the aggregate amount of approximately $5 million.[15] On August 23, 2018, upon PWB's motion, the Court lifted the stay to enable PWB to record abstracts of judgment against real properties in which both the estate and Goldstein claimed an interest.[16] The Court granted PWB's stay-relief motion (the "RFS Motion") over the opposition of the Trustee, the Debtor, and Rudinskas. The Court found that PWB was entitled to stay-relief even though the granting of such relief could make it more difficult for the Trustee to administer the Napoli and Wailea Properties:

> At the hearing, the Trustee argued that allowing PWB to perfect its judgment against properties claimed by the estate and Goldstein would severely complicate the Trustee's ability to administer such properties. The Trustee's focus upon PWB's perfection of its liens is an exercise in misdirection. Any challenges to administration posed by the perfection of PWB's liens is an inevitable consequence of the fact that the Debtor and Goldstein have been vigorously disputing the extent of their interests in the properties at issue for approximately ten years. The dispute between the Debtor and Goldstein, and the consequent absence of clear title to the properties, is the underlying problem that makes such properties difficult for the Trustee to administer. Whatever difficulties that may arise from PWB's perfection of its lien are only a symptom of this deeper underlying problem.
>
> Being cognizant that the perfection of PWB's lien could make administration of the estate's assets more challenging, the Court previously denied PWB's motion for stay-relief, without prejudice, to provide the Trustee an opportunity consummate the Amended Settlement Agreement. As discussed, the parties proved unable to consummate that agreement. The Court can no longer prejudice the rights of PWB to enforce valid judgments it holds against a non-debtor party simply because such enforcement may introduce additional complications into the Trustee's administration of the estate's interest in those properties in which both Goldstein and the estate claim an interest. It is important to emphasize that the blame for whatever difficulties the Trustee may encounter in administering the properties should not be placed upon PWB. The source of those difficulties is the inability of the Debtor and Goldstein to resolve their disputes concerning the properties, despite having been provided more than sufficient time to do so.

Final Ruling Granting PWB's Motion for Relief from the Automatic Stay [Doc. No. 648] at 9–10.

## II. Summary of the Motion to Reconsider

Movants assert that the RFS Order should be modified to bar PWB from perfecting its judgment liens against Goldstein in Hawaii (the location of the Wailea Property) or Los Angeles County (the location of the Napoli Property). Movants make the following arguments and representations in support of the Motion to Reconsider:

---

[15] *See* Request for Judicial Notice in Support of Pacific Western Bank's Motion for Relief from the Automatic Stay Under 11 U.S.C. §362 [Doc. No. 608].

[16] *See* Order Granting Motion for Relief from the Automatic Stay Under 11 U.S.C. §362 [Doc. No. 650] (the "RFS Order") and Final Ruling Granting PWB's Motion for Relief from the Automatic Stay [Doc. No. 648].

1) Pursuant to the Stipulated Judgment, the Napoli Property is owned solely by the Debtor. Therefore, PWB's recordation of an abstract of judgment against Goldstein in Los Angeles County can only serve "to interfere with the orderly administration of the estate and cloud title to real property still administered by the estate."[17]
2) There is no equity in the Wailea Property, which must also be administered in an orderly fashion. The Debtor, Goldstein, and other parties holding an interest in the Wailea Property have reached a settlement providing for the disposition of that property. The parties intend to seek approval of the settlement through a Bankruptcy Rule 9019 Motion; however, PWB's perfection of its judgment liens in Hawaii will interfere with the settlement. PWB should not be permitted to interfere with the administration of the Wailea Property.

## III. Findings and Conclusions

Section 704(a) provides that the "trustee shall collect and reduce to money the property of the estate for which such trustee serves …." "Only the Chapter 7 trustee may administer property of the estate …." *In re Arana*, 456 B.R. 161, 169–70 (Bankr. E.D.N.Y. 2011).

Movants' argument is that the RFS Order must be modified because it is interfering with the Trustee's ability to administer properties of the estate. The Trustee has not joined the Motion to Reconsider.

The Court declines to consider Movants' arguments, because they are not properly before the Court. The Trustee is solely responsible for administering the estate's property. It is the Trustee's responsibility to seek judicial intervention where necessary to facilitate the administration of estate assets. The arguments set forth in the Motion to Reconsider can be properly presented to the Court only by the Trustee. Were the Court to permit Movants to present such arguments, it would be tantamount to allowing Movants to usurp the Trustee's responsibility for administering the assets of the estate.

In addition, Movants' arguments with respect to the Wailea Property are contradictory. First, Movants assert (albeit without evidence) that there is no equity in the Wailea Property. Movants then state that notwithstanding the lack of equity, the Wailea Property "is still an asset of the estate that needs to be administered in an orderly fashion."[18] Movants fail to explain how the Wailea Property can be administered for the benefit of creditors if it is underwater. The lack of coherence in Movants' arguments further demonstrates why administration of estate assets should be left to the Trustee.

Based upon the foregoing, the Motion to Reconsider is DENIED. The Court will enter an order consistent with this Memorandum of Decision.

---

[17] Motion to Reconsider at 4.
[18] *Id.*

###

Date: November 7, 2018

Ernest M. Robles
United States Bankruptcy Judge